Argued March 16, reversed and remanded April 26, 1976

STATE OF OREGON, *Appellant,*
*v.*
SUZANNE HUTCHINS, *Respondent.*
(No. 35850, CA 5322)
548 P2d 1359

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*James A. Hearn,* Newport, argued the cause and filed the brief for respondent.

[ 281 ]

Before Schwab, Chief Judge, and Foley and Lee, Judges.

LEE, J.

**LEE, J.**

The state appeals the dismissal of an information filed against defendant. The issue is whether defendant's right to a speedy trial was violated when the police delayed over six months in executing a warrant for defendant's arrest.

On November 3, 1974, defendant left her employment at a Newport motel without leaving a forwarding address. She departed in the company of Linda Rice (Rice), a lifelong friend. The same day, the management of the motel reported a theft of approximately $200 to the Newport Police Department. A police officer investigated by interviewing the motel owner, the manager, a motel maid and a cook in an adjacent restaurant. He was informed by the motel manager that the defendant was suspected of the theft and received a general description of the defendant, a description of her car, and its license number. None of the persons interviewed supplied an address for the defendant.

The officer made a police teletype check with the Motor Vehicles Division and received a Milwaukie address for defendant. Also on November 3, 1974, the officer put out an all-points bulletin to "stop" defendant's car and detain the occupants.

The officer was not informed that the motel had defendant's employment application on file. The state concedes that the application contained the names of at least two persons who would have been able to disclose the whereabouts of defendant from November 3, 1974 to May 23, 1975. The motel management was not asked about the employment application until the preliminary hearing, June 4, 1975.

On November 12, 1974, a criminal information was filed against the defendant for theft in the first degree and a warrant was issued the same day.

The defendant first learned of the warrant for her arrest approximately three weeks after she applied for

unemployment benefits in April 1975. Defendant surrendered herself voluntarily on May 23, 1975.

Rice was with the defendant from the time she left the motel until May or June 1975 when Rice "took off" without indicating her destination. Defendant claims that she does not know of Rice's whereabouts. Defendant concedes that she knew the name and address of Rice's mother. There is no evidence that the defendant made any attempt to contact Rice's mother.

The trial court dismissed the information on the ground that the delay in executing the warrant denied defendant her right to a speedy trial. Defendant relied on *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972); *State v. Evans,* 19 Or App 345, 527 P2d 731 (1974), Sup Ct *review denied, cert denied,* 423 US 843 (1975); and *State v. Willingham,* 13 Or App 504, 510 P2d 1339 (1973).

■■ The right to a speedy trial is guaranteed by both state and federal constitutions. Art I, § 10[1] of the Oregon Constitution provides for the right to a speedy trial. *State v. Lee,* 110 Or 682, 684, 224 P 627 (1924). That guarantee, however, is to be given the same construction as the speedy trial provision of the Sixth Amendment to the United States Constitution.[2] *State v. Vawter,* 236 Or 85, 91, 386 P2d 915 (1963); *State v. Ivory,* 20 Or App 253, 531 P2d 293 (1975); *State v. Downing,* 4 Or App 269, 276, 478 P2d 420 (1970).

---

[1] Art 1, § 10, Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and *without delay,* and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." (Emphasis supplied.)

[2] U. S. Constitution, Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

■ We recognized in *State v. Evans, supra,* that the applicable standards for judging compliance with the right of speedy trial are found in *Barker v. Wingo, supra.*

In *Barker,* the United States Supreme Court held that:

> "A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 US at 530.

The court in *Barker* added that all of the factors must be considered together and that none alone is "* * * either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." (407 US at 533.) Applying these four tests to this case:

(1) The length of the delay has little significance. In *Evans,* the defendant was tried 22 months after the indictment and 19 months after his demand for a speedy trial. In *Barker,* the time between arrest and trial was over five years. In both cases the court held there was no violation of the right to a speedy trial.

(2) The defendant's assertion of her right was timely.

(3) Next, we consider any prejudice to defendant caused by the delay.

> "* * * Prejudice * * *" the *Barker* court held, "should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the

fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. * * *" 407 US at 532.

Applying these tests to the instant case: (i) there was no incarceration between the issuance of the warrant and the time the defendant voluntarily surrendered; (ii) defendant could have suffered no anxiety about the warrant before April 1975 when she first learned of it; but (iii) there is some possibility that the delay might impair the defense. Rice, who departed with defendant shortly after the alleged crime, disappeared. Defendant testified that she discussed the matter of the arrest warrant with Rice before she disappeared. Although Rice was a lifelong friend, defendant asserts that she "took off" with no word as to where she was going. There is no evidence that defendant has taken any initiative to contact Rice's mother although her affidavit states that "I have made every effort which I know how to make in order to locate Linda Rice and have been unable to locate her or make contact with her." The defendant has not shown how her defense would be impaired by Rice's absence.

(4) Finally, we consider the factor of prejudice to the defendant in the light of the reason for the delay. In both *Barker* and *Evans* there was no problem of where to find the defendants (in *Barker* the defendant was in jail for ten months and then released on bond; in *Evans* the defendant was confined in Oklahoma State Penitentiary). In those cases, the question was whether the prosecutions' tardiness in bringing the defendants to trial violated the defendants' Sixth Amendment rights—*when the prosecution knew where to find the defendants.* In the instant case, however, *the state did not know of the defendant's whereabouts.* There was no evidence that the state's ignorance was based on strategic considerations. Also there was no evidence that the ignorance of the defendant's whereabouts was intentional, or the result of gross negligence. Here the officer of a small-town police force responded to an alleged theft. His investigation

and follow-up showed a good-faith effort to locate the defendant.

The defendant relies on *State v. Willingham,* supra, where we upheld the dismissal of an indictment. That case, however, is more akin to the *Barker-Evans-Moore* class of cases because, as we noted in *Willingham:*

> "* * * The *police had defendant's address at all times.* No excuse is given for the six-and-one-half-month delay in serving the warrant. It was attributable to *pure negligence.*" (Emphasis supplied.) 13 Or App at 505.

We conclude that under the facts of this case defendant suffered no deprivation of her constitutional rights.

Reversed and remanded.