Argued August 21, affirmed November 4, reconsideration denied
December 11, 1974, petition for review denied January 14, 1975

# STATE OF OREGON, *Respondent, v.* JAMES SAMUEL EVANS (No. 38223), *Appellant.*

527 P2d 731

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Brian R. Barnes, Deputy District Attorney, Roseburg.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

TANZER, J.

Defendant appeals from convictions of assault and robbery while being armed with a dangerous weapon. He first contends that the trial court erred in denying his motion to dismiss for lack of a speedy trial.[1]

Defendant was indicted by the Douglas County Grand Jury on May 5, 1972. At that time he was in custody and awaiting trial in Oklahoma on other charges. He was subsequently convicted of those

---

[1] ORS 135.747; Art I, § 10 of the Oregon Constitution; and the Sixth and Fourteenth Amendments to the United States Constitution.

charges and sentenced to seven years in the Oklahoma State Penitentiary.

On August 24, 1972, defendant filed a motion for speedy trial or dismissal of charges. Almost eight months later, on April 10, 1973, defendant filed a motion to dismiss because he had not been speedily tried.

The state made no attempt to secure defendant for trial during the next month and on May 8, 1973, a hearing was held on defendant's motion to dismiss. The district attorney for Douglas County argued that because Oklahoma was not a member of the Interstate Agreement on Detainers, Oregon was under no obligation to attempt to secure defendant for trial before his release from prison in Oklahoma. The trial court, however, was of the opinion that efforts should be made to obtain the voluntary cooperation of Oklahoma and directed the state to do so.

On July 23, 1973, two and one-half months after the hearing, the state made its first attempt to secure defendant for trial. Letters requesting the release of defendant were sent both to Oklahoma's Governor Hall and to the warden of the Oklahoma State Penitentiary. The requests, however, were made as if under the Interstate Agreement on Detainers when, as the Douglas County District Attorney was aware, Oklahoma was not a party to that agreement.

On September 6, 1973, the Oklahoma warden informed Douglas County by letter that since Oklahoma was not a member of the interstate agreement the only means for obtaining defendant for trial would be by executive agreement between the appropriate governors. The letter also stated that the agreement should stipulate that defendant would be transported at Oregon's expense.

On November 27, 1973, the Douglas County District Attorney sent a proposed executive agreement to Oregon's Governor McCall. The agreement, however, did not contain the necessary stipulation as to transportation costs. Although it was signed and forwarded to Governor Hall, it was eventually returned unexecuted because of the failure to include that stipulation.

On February 7, 1974, defendant was paroled to the Douglas County detainer. He unsuccessfully moved to set aside the indictment and he was then tried on March 5, 1974, approximately 22 months after the indictment and 19 months after his demand for speedy trial.

■ In determining whether defendant has been deprived of his right to a speedy trial, we must consider four factors: the length of the delay, the reasons for the delay, whether defendant asserted his right to a speedy trial, and prejudice to defendant. *Barker v. Wingo,* 407 US 514, 530, 92 S Ct 2182, 33 L Ed 2d 101 (1972). *See also State v. Cox,* 12 Or App 215, 505 P2d 360 (1973), *State v. Robinson,* 3 Or App 200, 473 P2d 152 (1970).

First, the defendant clearly asserted his right to speedy trial by his motions of August 1972 and April 1973.

■ The prosecution was not pursued with equal diligence. The state had a constitutional duty to make a diligent, good faith effort to bring the defendant to trial even though he was imprisoned in another jurisdiction regardless of whether the custodial jurisdiction is a member of the Interstate Agreement on Detainers. *Smith v. Hooey,* 393 US 374, 89 S Ct 575, 21 L Ed 2d

607 (1969). The facts demonstrate that the prosecution was not administered with the dispatch which is expected to be accorded to matters which the state considers to be important. Most of the delay appears to have been directly caused by the inexcusable failure of the state to make a diligent, good faith effort to secure the defendant for trial.[2]

■ The blameworthiness of the prosecutor, however, does not alone make the delay oppressive to the defendant. Nor does it forfeit the right of the public to the enforcement of the criminal law. The effect of the delay upon the ability of the defendant to defend must next be examined.

■■ The two remaining factors, the length of delay and the prejudice to the defendant, are inextricably linked. A basic purpose of the constitutional guaranty of a speedy trial is to limit the possibility that a long delay will impair the ability of the defendant to defend himself.[3] *State v. Estlick,* 9 Or App 281, 496 P2d 933 (1972). Whether the length of the delay is intolerably onerous should therefore be determined in light of the reasonable possibility in each case that prejudice may have occurred as a result of the delay.

---

[2] It is possible that some delay was caused because the defendant filed his motions with the district court clerk instead of the circuit court clerk, but they were promptly transferred. The district attorney did not rely upon this fact below as a cause of any substantial portion of the delay and there is nothing in the record, beyond the assertions of appellate counsel, to support a conclusion to the contrary.

[3] Other purposes served by speedy trial are to remove the cloud from the good name of the accused and to lift any pretrial restrictions on his liberty. Because defendant awaited trial in the Oklahoma penitentiary, this opinion does not concern itself with those purposes. Similarly, we need not consider the effect of the detainer upon defendant's parole eligibility because he was actually paroled two years early in order to return to Oregon for this trial.

██ In some situations, depending in part upon the nature and gravity of the case, the passage of sufficient time itself may justify an inference of a reasonable possibility of prejudice to the defendant arising from the deterioration of memory or the disappearance of witnesses. *Cf. State v. Downing,* 4 Or App 269, 478 P2d 420 (1970). The passage of 22 months between indictment and trial, as here, is sufficient to give color to such a claim, but does not of itself establish it. *Harrison v. United States,* 392 US 219, 88 S Ct 2008, 20 L Ed 2d 1047 (1968); *Hoag v. New Jersey,* 356 US 464, 78 S Ct 829, 2 L Ed 2d 913 (1958).

■ To necessitate the drastic remedy of dismissal requires more than the mere counting of months passed between complaint or indictment and trial. It requires some showing of circumstances which imply a reasonable possibility of prejudice. The more time gone by, the more likely we must consider that reasonable possibility to be and the more ready we are to impute the loss of evidence to the passage of time.

We therefore review this record for showing of any circumstances which would indicate a reasonable possibility of prejudice. There are only three possible references to it:

■ In defendant's affidavit in support of his motion of February 21, 1974 to set aside the indictment, he alleges:

> "That I believe that this case is of such nature that the lapse of time will greatly hinder my efforts and those of my attorney to properly prepare my case."

This allegation is conclusory and tells us nothing factual from which the existence or not of reasonable possibility of prejudice can be determined.

■ During the hearing on the motion, defense counsel argued to the court generally:

"* * * And this case is a robbery case, as the indictment reflects, and it's the sort of case where the defendant could be greatly prejudiced by a delay. If, for instance, he was going to rely on an alibi defense, it's quite possible that all the witnesses who could have helped him are long gone. He, himself, was sort of a transient here; he lived in several locations and the people who could have helped him, if this would be the situation, might also be gone. The witnesses— — As I understand, it was a gas station—customers and/or witnesses who may have been there, could be gone. At this point, who knows?

"THE COURT: Well, are they?

"MR. HENDERSHOTT: We don't know, but I am suggesting that it's the type of a case where the delay permits the witnesses to disperse, to the great prejudice of the defendant.

"THE COURT: As I understand this one case cited by the State, that the delay in and of itself doesn't import prejudice but it would be necessary to show that the delay did, in fact, prejudice the defense. If all witnesses are available, I don't know that the mere passage of time would——in and of itself, would mean that you were entitled to a dismissal.

"MR. HENDERSHOTT: Well, on approximately five days' notice, this is a bit difficult to find people who were around two years ago."

Later in the same hearing, when asked about a trial date, defense counsel responded:

"* * * That is a bit soon. I think one of the witnesses remains to be located.

"* * * * *

"* * * We have to find her."

These general statements of counsel to the court

reflect at best the need for further time for investigation and the court granted an additional week. There was no further report to the court and the motion was not renewed. On the state of the record, we know only that counsel was going to attempt to find a witness. We cannot know whether the pursuit was successful, whether it was diligent or whether it was abandoned.

■ Defendant testified at trial that he was generally at home with his wife at the time of the morning when the robbery occurred. He then testified:

> "A I have been trying to get Oregon to bring me here for trial since August of '72, and if I would have been here soon enough, I would have had—— my wife would have been available as a witness, and now, they can't even find her."

The trial testimony was directed to the jury on the question of guilt or innocence. It was not before the court prior to trial on the motion to dismiss. It should probably not be considered at all, but weighed in light of the other trial evidence of eye-witness identification and multiple voluntary confessions, it adds little to defendant's case on his motion whether we consider it or not.

■ In summary, then, there is no showing in this case of evidence not available to the defense due to the passage of time, nor of the efforts, diligence and success or failure of the defense to obtain such evidence. In the absence of such a showing, we are unable to conclude that there is a reasonable possibility of prejudice to the defense arising from the delay while he was incarcerated elsewhere.

■ Applying the balancing test of *Barker v. Wingo,*

supra, we conclude that defendant was not denied his right to a speedy trial and that the court therefore properly denied his motion to dismiss the indictment.

 Defendant next assigns as error the denial of his motion for mistrial, made at the conclusion of evidence, based upon the admission of identification testimony by the victim on ground that the investigative procedures were unduly suggestive under *Simmons v. United States*, 390 US 377, 88 S Ct 967, 19 L Ed 2d 1247 (1968). While we find no such problem, we need not reach the issue. An objection to the admission of evidence must be timely made so that error, if any, can be avoided in the first instance. A motion for mistrial made after the close of the evidence does not substitute for timely objection so as to preserve error for appellate review.

Affirmed.