Argued March 7, reversed May 31, 1977

# STATE OF OREGON, *Respondent,*
## *v.*
# MARSHALL IVORY, *Petitioner.*
## (CA 6343, SC 25053)
### 564 P2d 1039

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

LENT, J.

**LENT, J.**

Defendant petitioned for a review of the decision of the Court of Appeals in *State v. Ivory,* 27 Or App 685, 557 P2d 698 (1976). The trial court had dismissed the case upon federal constitutional grounds for failure to provide defendant a speedy trial, and the State had appealed. In reversing, the Court of Appeals found no denial of defendant's speedy trial rights. We granted review.

Defendant allegedly sold cocaine to an undercover police officer on October 31, 1974. At that time defendant was a student at the University of Oregon. Shortly afterward, defendant withdrew from school for financial reasons and moved to his family's home in Portland.

On January 30, 1975, defendant was secretly indicted by the Lane County Grand Jury for the crime of illegal sale of narcotics. ORS 167.207. Defendant was not arrested on this charge until December 14, 1975, ten and one-half months later.

The Court of Appeals analyzed the speedy trial factors enunciated in *Barker v. Wingo,* 407 US 514 (1972). Under *Barker,* to determine whether defendant's 14th Amendment rights (incorporating the 6th Amendment right to a speedy trial) have been denied, a court must balance four factors: (1) the length of the delay, (2) whether defendant asserted his right to a speedy trial, (3) the reasons for the delay, and (4) prejudice to the defendant. In its decision, the Court of Appeals found: (1) the delay "longer than should be tolerated without further inquiry"; (2) the motion to dismiss was timely; (3) the delay resulted from negligence but was "not intentionally caused" by the State. "Easily available avenues of investigation," such as checking with the Department of Motor Vehicles or the University Registrar, would have disclosed the location of defendant's Portland residence.

As to the fourth factor under *Barker,* the Court of

Appeals found, however, insufficient showing of prejudice to the defendant to warrant dismissal. Defendant testified in the hearing on the motion to dismiss that three key witnesses vital to his defense of entrapment had disappeared a few months after the date of the indictment. He claimed one witness could testify as to the initial conversation defendant had with a police agent to show lack of predisposition to commit the alleged crime. This witness was seen in Eugene as late as June 1975. Attempts by a private investigator to locate her subsequently were unfruitful.

Another witness, a student working with the police, would testify, according to defendant, that he solicited defendant to sell cocaine on several occasions over an extended period of time. Defendant asserted that this witness was working with the police as late as March 1975 but could not be located subsequent to defendant's arrest.

The third witness was the supplier of cocaine, who purportedly could testify that defendant was not a dealer and did not profit from the transaction in controversy. As to this witness, the Court of Appeals found it to be:

"* * * unlikely that he could be persuaded to waive his privilege against self-incrimination and to give the testimony which defendant expects. Therefore, there is no reasonable possibility that defendant has been prejudiced by his unavailability."[1] 27 Or App 685, 690, 557 P2d 698 (1976).

As to the other two witnesses, the Court of Appeals found defendant's estimate of their testimony to be conclusory and nonfactual. Therefore, the Court of Appeals concluded that no actual prejudice had been shown, and the *Barker* balance was not struck in defendant's favor.

---

[1] We tend to agree that if this witness would still be in a position to assert his privilege against self-incrimination, it is unlikely that he would waive it. The record is devoid, however, of any basis for concluding that this witness, as of the time of hearing on the motion, would or would not be in a position to invoke the privilege.

■ We need not reach a constitutional issue if a controversy can be adequately resolved through resort to an applicable statute. *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977). The Oregon speedy trial statute is codified at ORS 135.747:

> "If a defendant charged with a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Under the provisions of ORS 135.753(2), such a dismissal will not bar reprosecution for the same crime if the crime is a felony, as in this case.

■ Resolution of this issue solely by resort to ORS 135.747 would not adequately resolve this case. Defendant's motion to dismiss was based on constitutional provisions, not on the statute. A finding that ORS 135.747 was violated would allow reprosecution by the state. On the other hand, if it is found that defendant's constitutional entitlement to a speedy trial has been denied, the remedy is dismissal, which is a bar to further prosecution for the same offense. In *Strunk v. United States,* 412 US 434, 440 (1973), the Supreme Court held that dismissal with prejudice was "the only possible remedy" for violation of the 6th Amendment right to a speedy trial.

Implicit in the order of dismissal entered by the trial court is the conclusion that defendant's speedy trial rights under the United States Constitution had been denied. The motion was grounded on federal constitutional provisions, and evidence at the hearing was directed to each of the *Barker* factors. Because of this, not only is the propriety of dismissal before us for review, but also the effect of dismissal in this case.

■ Initial inquiry should concern the applicability of Article I, Section 10, of the Oregon Constitution, which provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay * * *."

In *State v. Clark,* 86 Or 464, 168 P 944 (1917), this provision was held to require "a trial conducted according to fixed rules, regulations and proceedings of law, free from vexatious, capricious and oppressive delays, created by the ministers of justice * * *." (86 Or at 471.) *Accord: State v. Evans,* 249 Or 314, 319, 432 P2d 175 (1967); *State v. Vawter,* 236 Or 85, 92, 386 P2d 915 (1963); *State v. Jackson,* 228 Or 371, 365 P2d 294 (1961); and *State v. Kuhnhausen,* 201 Or 478, 513, 266 P2d 698, 272 P2d 225 (1954).

■ We have in the past treated the guarantee of a speedy trial granted by Article I, Section 10, as equivalent to the right to a speedy trial provided in the 6th Amendment to the United States Constitution. In *State v. Vawter, supra,* we commented that:

"* * * No different measure of protection of the rights of persons accused of crime can reasonably be said to have been in the minds of the framers of our constitution." (236 Or 85, 91, 386 P2d 915 (1963)).

Similarly, in *State v. Evans, supra,* it was held that the state constitutional provision "should be given the same construction as the guarantee of a speedy trial contained in the 6th Amendment * * *." (249 Or at 317.) *See also State v. Serrell,* 265 Or 216, 507 P2d 1405 (1973).

■ There are some differences between the requirement that "justice * * * be administered * * * without delay" and that "the accused shall enjoy the right to a speedy * * * trial." The Oregon provision applies to both civil and criminal proceedings, *State v. Kuhnhausen, supra* at 512; the federal guarantee only protects a person "accused" of a crime.

We are convinced, however, that the analysis used by the Supreme Court in *Barker* is appropriate to test the guarantee of Article I, Section 10, of our Constitution. It is consistent with the "free from vexatious,

capricious, and oppressive delays" test which we have historically used. Similarly, the remedy available for a violation of the Article I, Section 10, guarantee should be equivalent to the federal remedy under *Strunk* (dismissal with a bar to reprosecution).[2] Having identified the *Barker* factors as the appropriate criteria, we turn to the facts of this case to see if the correct balance was struck.

We agree with the analysis of the Court of Appeals as to the first three factors. The length of the delay,[3] the negligence of the state in causing the delay, and defendant's timely assertion of his speedy trial rights, all weigh against the state in this proceeding.

■ Before examining the prejudice factor, however, we note that in some cases prejudice need not be shown as part of the speedy trial calculus. As the Court noted in *Moore v. Arizona,* 414 US 25, 26 (1973):

> "*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial
> * * *."

This is so because *Barker* commands *a balancing of all four criteria.* The length of the delay in some cases may be presumptively prejudicial, and, assuming that it was not caused by the defendant and that defendant desired a speedy resolution, proof of prejudice may be

---

[2] It may be that an interpretation of a comparable Oregon constitutional provision which differs from the view taken by the Supreme Court of similar federal constitutional language would be appropriate in some cases. *Cf., Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976) (rejection of fundamental interest-strict scrutiny analysis under the Oregon Constitution, Article I, Section 20 (equal privileges and immunities clause)). On the subject of an independent interpretation of state constitutional provisions, see Linde, "Without Due Process," 49 Or L Rev 125 (1970). For a discussion of when an independent construction of parallel state constitutional provisions would be needed, see generally, Note, "The New Federalism: Toward a Principled Interpretation of the State Constitution," 29 Stan L Rev 297, 316 (1977).

[3] Delays of this duration have been held sufficient to trigger analysis of the other relevant factors. *Paine v. McCarthy,* 527 F2d 173 (9th Cir 1975), *cert. den.* 424 US 957 (1976); *United States v. Fay,* 505 F2d 1037 (1st Cir 1974); *State v. Willingham,* 13 Or App 504, 510 P2d 1339 (1973); *State v. Rowley,* 6 Or App 13, 485 P2d 1120 (1971).

unnecessary. As we observed in *State v. Vawter, supra* at 96:

> "When the period of time that has elapsed after the defendant is held to answer is of such length as to be manifestly excessive and unreasonable, it may be incumbent upon the state, in order to avoid dismissal of the indictment, to justify the delay * * *."[4]

Similarly, if the delay were purposely caused by the government in order to hamper the defense, dismissal may be the appropriate remedy even if no prejudice were shown. In the present case the delay was not manifestly excessive or purposely caused. In these circumstances we must determine what is required to be shown with respect to the factor of prejudice.

The author of a pre-*Barker* Note, "The Right to a Speedy Trial," 20 Stan L Rev 476 (1968), suggests proceeding in a slightly different order than we have done here to examine the relationship between prejudice and the cause of the delay. He takes the position that neither should the government have the burden of showing want of prejudice nor the accused the existence of prejudice. He argues that:

> "* * * [I]f a reasonable possibility of prejudice was found to have been created, the cause of the delay would then be the determinative factor in adjudicating the speedy-trial claim." 20 Stan L Rev at 498.

(Were we to choose his approach *in toto,* we should note that the cause of the delay here was that the police made hardly any effort to arrest the defendant on the warrant outstanding for 10½ months.) In adopting the "reasonable possibility" language, the author simply took a short step forward from the language in *United States v. Ewell,* 383 US 116 (1966), where the court said at page 120:

> "* * * This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation *and to limit the possibilities* that long

---

[4] *See also State v. Puckett,* 22 Or App 154, 157, 538 P2d 74 (1975); *State v. Evans,* 19 Or App 345, 351, 527 P2d 731 (1974).

delay will impair the ability of an accused to defend himself. \* \* \*" (Emphasis added.)

The Court of Appeals in the pre-*Barker* decision, *State v. Estlick,* 9 Or App 281, 287, 496 P2d 933 (1972) took that same step. In at least two cases since *Estlick* and *Barker,* the Court of Appeals has used the words "reasonable possibility" with respect to this factor. *See State v. Evans,* 19 Or App 345, 350, 527 P2d 731 (1974), and *State v. Ivory,* 27 Or App 685, 690, 557 P2d 698 (1976).

The choice of that term is warranted by the language of the *Barker* court at page 532, drawing upon *United States v. Ewell, supra:*

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. [footnote omitted] Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."

*See also Moore v. Arizona, supra* at page 26, where the court used the term "possible prejudice."

From these authorities we deem it proper to adopt the rule that where the other three factors are in the defendant's favor the prejudice factor is met if the evidence taken as a whole shows some reasonable possibility of prejudice.

Three different types of prejudice from pre-trial delays have been identifed: the damage arising from prolonged incarceration while awaiting trial; the anxiety and public suspicion resulting from public accusa-

tion of a crime; and, finally, the hampering of ability to defend at trial where witnesses or records have disappeared or memories have dimmed.[5] Only the latter type is at issue here.

Proof of actual prejudice is often quite difficult. As Mr. Justice Brennan observed, concurring in *Dickey v. Florida,* 398 US 30, 53 (1970):

> "* * * [I]t does not follow that prejudice—or its absence, if the burden of proof is on the government— can be satisfactorily shown in most cases. Certainly, as the present case indicates, it can be established in some instances. It is obvious, for example, if the accused has been imprisoned for a lengthy period awaiting trial, or if the government has delayed in clear bad faith. But concrete evidence of prejudice is often not at hand. Even if it is possible to show that witnesses and documents, once present, are now unavailable, proving their materiality is more difficult. And it borders on the impossible to measure the cost of delay in terms of the dimmed memories of the parties and available witnesses."

We conclude that in cases where inquiry into impairment of defense is necessary, it would be harsh to require proof with certainty. It is sufficient to show only a reasonable possibility of prejudice; this was shown in the present case by identification of potentially favorable witnesses who could not be found due to a delayed trial.[6] As was noted in *Barker v. Wingo, supra* at 532, "If witnesses die or disappear during a delay, the prejudice is obvious."[7]

Post-indictment and pre-arrest delay, as in this case, is inherently more damaging to defendant's

---

[5]These types of prejudice were identified in *Barker v. Wingo,* 407 US 514, 532-33 (1972), and *State v. Vawter,* 236 Or 85, 95, 386 P2d 915 (1963).

[6]Defendant had attempted to locate the alleged witnesses through an investigator. The trial judge gave the state a week to locate any one of the three missing witnesses before making his order of dismissal. Apparently the state was unable to find any of them.

[7]It should also be noted that each of the *Barker* factors involves primarily factual inquiries, so that the decision of the trial court granting a dismissal is entitled to great weight. *State v. Vawter,* 236 Or 85, 92, 386 P2d 915 (1963); *State v. Gardner,* 233 Or 252, 256, 377 P2d 919 (1963).

ability to obtain a fair trial than those cases involving only post-arrest delay. Prior to an arrest defendant may be unaware of the outstanding charge,[8] so that there is little inducement to preserve memories and evidence. This being so, the risk of an unfair trial increases.

Reversed.

---

[8]Defendant here was probably unaware of the secret indictment. He testified that he was completely unaware of the existence of the indictment prior to his arrest. The circumstantial evidence supports a fair inference that he was unaware of the indictment. (Upon the record in this case we need not reach the issue whether the state or the defendant has the burden of coming forward with evidence concerning the defendant's want of knowledge that an indictment is outstanding.)