Argued and submitted March 30, affirmed June 15,
reconsideration denied September 24,
petition for review denied October 20, 1981 (291 Or 771)

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT GRAVES MIEBACH,
*Appellant.*

(No. 77-6327, CA 18034)

629 P2d 1312

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for ex-convict in possession of a firearm. ORS 166.270. He assigns as errors the denial of his motion to suppress evidence seized pursuant to a warrant and his motion to dismiss. We affirm.

Pursuant to an arrest warrant, defendant was arrested in his residence on November 4, 1977, for the charges of theft in the first degree and criminal drug promotion. One of the arresting officers observed a pan containing green vegetable matter, which he recognized as marijuana, on a coffee table within approximately three feet of defendant. The officer secured the premises and immediately applied for a warrant to search defendant's residence for additional marijuana. During the search, a nine millimeter weapon was discovered. The weapon is the basis of defendant's present conviction.

Defendant first contends that the trial court erred in denying his motion to suppress evidence of the weapon. He argues that the facts contained in the affidavit, set out in the margin,[1] were insufficient to establish probable cause to search the house. Specifically, he argues that the officer's observation of a minimal amount of marijuana did not provide probable cause to believe more marijuana would be discovered by a further search of his residence.

---

[1]

> "In the District Court of the State
> "of Oregon for Lane County
>
> "STATE OF OREGON )
> ) ss  AFFIDAVIT FOR SEARCH
> "County of Lane ) WARRANT

"I, DAVID W. POPPE, being first duly sworn on oath, hereby depose and say:

"That I am a police officer on the Eugene Police Department and have been so employed for 6 1/3 years.

"That during the course of my employment I have had over 100 hours of formal training in the identification of narcotics and dangerous drugs and I have recognized marijuana numerous times during my employment and had this confirmed by analysis in the Eugene Police Department Crime Laboratory.

Defendant relies on *State v. Mepham,* 46 Or App 839, 613 P2d 500, *rev den* 289 Or 588 (1980). In *Mepham,* the affidavit, in pertinent part, stated:

"* * *While on the porch, I observed through the open doorway within the aforesaid residence a coffee table WHICH WAS [sic] approximately six feet away from the front door. I noticed a green vegetable substance which I recognized to be the controlled substance marijuana in a container upon the coffee table. That we at that time

"That on November 3, 1977, I was present when JACK HOLDEN, date of birth 5-05-40, was arrested in his vehicle for 'Theft I.' That I observed a 3 inch by 5 inch card on the dashboard of Holden's vehicle which has the following information:

" 'Goose, packs 9 m.m., 1715 Concord Ave. Act Border Line retard' and includes directions to 1715 Concord Avenue in Glenwood.

"That on April 25, 1977, I was present at 4057 E 19th Avenue, Eugene, Lane County, Oregon, when Robert Graves Miebach was arrested for 'Criminal Drug Promotion.' That this address on 19th Avenue is approximately two blocks away from the former address at 1715 Concord Avenue, Eugene, Lane County, Oregon. That I know Robert Graves Miebach also goes by the Name 'Goose.'

"That on November 4, 1977 I arrested Robert Graves Miebach at 1715 Concord Avenue, Eugene, Lane County, Oregon on two Lane County warrants which were 'Theft I' and 'Criminal Drug Promotion.' That Miebach was standing in the living room of this residence and approximately three feet from Miebach was a pan containing green vegetable matter which I recognized as the narcotic drug marijuana. This material was openly visible on a coffee table.

"That the residence at 1715 Concord Avenue, in the area known as 'Glenwood,' City of Eugene, Lane County, Oregon, is further described as a one-story, single-family, wood-framed dwelling, beige in color, with the numbers '1715' to the right of it. front door.

"That based on the preceding information I have probable cause to believe and do believe that evidence of the crime of 'illegal posssession of narcotics' to wit: marijuana, is presently located in the above described residence and curtilage at 1715 Concord Avenue, the area known as 'Glenwood,' City of Eugene, Lane County, Oregon, and therefore your affiant prays that the court issue a warrant for the search of the above described residence and curtilage for the narcotic drug marijuana and evidence of its use and possession.

" /s/ David W. Poppe

"DAVID W. POPPE

"Subscribed and Sworn to before me this 4th day of November, 1977.

" /s/ Bryan T. Hodges

"District Court Judge
"1:25 p.m."

entered the residence and secured the residence for purposes of obtaining a search warrant." (Brackets in original.) 46 Or App at 841.

We held that while the affidavit was sufficient to authorize seizure of the marijuana observed, it did not establish probable cause to search for additional marijuana. We noted:

"In some cases, some evidence of the presence of an illegal substance may establish probable cause that more of the same material will be found. *See State v. Krohn,* 15 Or App 63, 514 P2d 1359 (1973) [*rev den* (1974)]. We do not consider this to be such a case. The affidavit does not provide enough facts to warrant the reasonable suspicion that the container was not the household's entire supply. It does not justify a search of the house. *See State v. McGee,* 45 Or App 13, 607 P2d 217 (1980) and *State v. Sagner,* 12 Or App 459, 506 P2d 510 [*rev den*] (1973)." 46 Or App at 842.

Defendant contends that "no further information militating toward a probability of narcotics was presented here than in *Mepham.*" We disagree. Unlike in *Mepham,* the affidavit in this case contains additional relevant facts. Specifically, the affidavit recites that on two recent previous occasions, including the day the affidavit was prepared, the affiant was present when defendant was arrested for crimes involving controlled substances. We conclude that the existence of these facts in the affidavit leads to a well warranted suspicion that defendant was involved in drug activities and that the house contained more marijuana than the amount observed on the table. The affidavit establishes probable cause to believe there would be more marijuana in the house. The motion to suppress was properly denied.

Defendant next assigns as error the trial court's denial of his motion to dismiss. He contends that he was denied a right to a speedy trial under the Interstate Agreement on Detainers, ORS 135.775, ORS 135.747,[2] Article I, §

---

[2] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

10 of the Oregon Constitution[3] and the Sixth Amendment to the United States Constitution.[4]

Defendant was indicted in November, 1977. In January, 1978, he was released on his own recognizance to await trial. Sometime later, he violated his release agreement and absconded. In November, 1978, he was arrested in California on an unrelated charge and in March, 1979, he was tried, convicted and ultimately incarcerated on the California charge.

On July 17, 1979, pursuant to ORS 135.775, Lane County authorities filed a detainer for defendant with the California prison authorities. On September 14, 1979, defendant acknowledged receipt of a document entitled "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition." That document informed him of the Lane County detainer and the procedure for requesting disposition of the outstanding charges. Thereafter, defendant signed a document entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints," which was dated October 25, 1979. On November 2, 1979, the district attorney's office in Lane County acknowledged receipt of defendant's request along with two other supporting documents: "Certificate of Inmate Status" and "Offer To Deliver Temporary Custody." The former document was dated, but the date on the copy in the trial court file is illegible. The latter document was dated September 26, 1979, and, on some date also not legible, was signed by defendant. On November 27, 1979, defendant was transported to Oregon. His trial on the present charge commenced April 2, 1980.

The Interstate Agreement on Detainers (Agreement), ORS 135.775, contains a standardized procedure to

---

[3] Article I, § 10 provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[4] Amendment VI, in pertinent part, provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

insure the speedy trial of persons incarcerated in other jurisdictions who have outstanding untried charges in other party states. The Agreement contains two articles (Art. III and Art. IV) which regulate the prosecution of prisioners covered by its terms. Art. III provides that a prisoner may waive extradition and make a written request for final disposition of the charges pending in another state. The Article further provides that the prisoner "shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court * * * written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *." Art. IV provides for the state to obtain custody of a prisoner who does not waive extradition. It states that "[i]n respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state * * *." The Agreement also provides that in the event the prisoner is not brought to trial within the applicable time periods provided in Art. III and Art. IV, "the appropriate court * * * shall enter an order dismising the [indictment] with prejudice * * *." Art. V (c).

■■ Defendant first contends that the 120 .day limit contained in Art. IV applies here, and so he should have been brought to trial within 120 days after his arrival in Oregon. Defendant sought final disposition of his Oregon charge pursuant to the provisions contained in Art. III. He was not brought back to Oregon under Art. IV. The 120 day limit in Art. IV applies only in "respect of any proceeding made possible by this Article." Art. IV(c). Only the time period of Art. III is applicable in this case.[5] *See State v. Mason,* 90 NJ Super 464, 218 A2d 158 (1966); *People v. Esposito,* 201 NYS2d 83, 37 M2d 386 (1960).

Defendant next argues that the 180 day time limitation of Art. III expired before he was brought to trial on

---

[5] Defendant also argues that he would be deprived of the right to equal protection of the laws under the Fourteenth Amendment, if the 120 day limit contained in Art. IV is not applicable in this case. The record does not reveal that defendant raised this argument in the trial court. Arguments not raised below will not be considered for the first time on appeal, absent error apparent on the face of the record or unless justice otherwise requires. *State v. Connett,* 48 Or App 261, 264 n 5, 616 P2d 1191 (1980); *State v. Applegate,* 39 Or App 17, 591 P2d 371, *rev den* 287 Or 301 (1979). We decline to consider defendant's argument.

April 2, 1980. He submits on appeal that his *request* for disposition of the Lane County charges was "caused to be delivered" the day it was *sent* to Oregon from California, which he contends was *September 26, 1979.* In its brief, the state does not dispute defendant's assertion that his request for disposition of the charges was sent to Oregon on September 26, 1979, but argues, as outlined below, that defendant is not entitled to dismissal.

Both appellate counsel state in their briefs that defendant's *request* for disposition was *received* on *October 25, 1979.* The state on appeal argues that the time period under Art. III runs from the date defendant's request was *received* in Oregon. Since the interim period between October 25, 1979, and the date of defendant's trial was 161 days, the state therefore contends that defendant's motion was properly denied.

Neither appellate counsel in this case represented its respective party at trial. In reviewing the arguments on appeal in light of the trial court record, we believe that both counsel have misapprehended the critical date, which is shown in the record. According to the documents attached to defendant's motion, and the comments of his counsel, defendant's *request for disposition* was made on October 25, 1979, *not* September 26, 1979. The trial court in its oral ruling on defendant's motion used October 25, 1979, as the date defendant requested disposition of the Lane County charges.

It is unnecessary, therefore, for us to decide whether the time limitation in Art. III begins to run from the date the request for final disposition is sent or received. The only issue presented to the trial court, and for us to decide on appeal, is whether the time period began at some point *prior to* the time defendant prepared his request for final disposition, which is dated October 25, 1979.

Article III, in pertinent part, provides:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the

*prisoner,* he *shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint:* Provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) *The written notice and request for final disposition referred to in paragraph (a) of this Article shall be given or sent by the prisoner to the warden or other official having custody of him, who shall promptly forward it* together with the certificate to the prosecuting official and court by registered or certified mail, return receipt requested.

"* * * * *." (Emphasis added.)

■ ■    The provisions of Art. III place one responsibility on a prisoner:  the prisoner must provide the warden or other official having custody of him a "written notice and request for final disposition." Thereafter, the warden or custodial official is charged with compiling the necessary accompanying documentation and promptly forwarding the documents to the receiving state. The entire process begins when the defendant requests final disposition of his untried charges. It follows that defendant could not have "caused to be delivered" the written notice of the place of his imprisonment *and* his request for final diposition of his indictment until he prepared his request. His request was dated October 25, 1979, and he was tried 161 days after that date. He was therefore not entitled to dismissal under Art. III. The trial court did not err in denying defendant's motion to dismiss under the Agreement.

■    Defendant's final contention is that his constitutional right to a speedy trial was violated. The Supreme Court in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L

Ed 2d 101 (1972), set out a four factor test to be considered in assessing an alleged constitutional violation of a defendant's right to speedy trial:

> "* * * length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 US at 530.

We utilize the same test in determining if defendant's speedy trial right under Oregon Constitution Article I, § 10 was violated. *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977).

■  In the present case, the total delay from indictment to trial was approximately two and one-half years. As noted, sometime after January, 1978, defendant absconded to California. He was not heard from again until November, 1978. Further, he was not tried, convicted and incarcerated on charges there until March, 1979. Defendant could not be brought to Oregon under ORS 135.775 prior to being sentenced on his California conviction. Art. III (a) and Art. IV (a). We do not believe that any delay occasioned by these events can be charged to the state.

In July, 1979, Lane County filed a detainer with the California authorities. Defendant's request for disposition was dated October 25, 1979. In late November, 1979, he was returned to Oregon and ultimately tried on April 2, 1980. The principal reason for the delay between March, 1979, and April, 1980, was the defendant's incarceration in California and the proceedings necessary to bring defendant to trial pursuant to ORS 135.775. There is nothing in the record to indicate the delay was intentionally caused by the state to the prejudice of defendant. *Barker v. Wingo, supra.* Defendant requested speedy disposition of his charge on October 25, 1979, and the charge was disposed of within 161 days. Finally, defendant alleges no prejudice. The absence of any allegation of prejudice is significant. *See State v. Ivory, supra; State v. Burns,* 43 Or App 937, 607 P2d 735 (1979).

We find that defendant's constitutional right to a speedy trial was not violated. The trial court did not err in denying defendant's motion to dismiss.

Affirmed.