# STATE OF OREGON,
*Respondent,*

*v.*

# JAMES HOWARD TAYLOR,
*Appellant.*

## (No. M79-1040, CA 19398)

645 P2d 547

Thomas C. Bernier, Assistant Public Defender, Roseburg, argued the cause and filed the brief for appellant.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

YOUNG, J.

## YOUNG, J.

Defendant appeals from a judgment of conviction for driving while under the influence of intoxicants, ORS 487.540, enhanced to a misdemeanor. ORS 484.365. Defendant argues that he was denied his right to a speedy trial and the opportunity to consult an attorney before taking a breathalyzer test and that a tape recording taken at the scene of the stop was improperly admitted into evidence. We affirm.

At the scene of the stop, the arresting officer conducted field sobriety tests and made a tape recording of defendant's responses to questions during the tests. On completion of the tests, defendant was advised of his *Miranda*[1] rights and arrested. Defendant then requested an attorney. The officer told defendant that he could call one when he arrived at the jail. At the jail, defendant made no request to contact an attorney and agreed to take the breathalyzer test. After the test, defendant was asked if he wanted to call an attorney. Defendant refused and instead called a friend. He does not contend that the police denied him access to a telephone or an attorney.

On November 8, 1979, the day after the arrest, defendant was arraigned, and counsel was appointed. Trial was set for March 17, 1980. On the morning of the trial, the state informed defendant that it had learned the day before of the existence of the tape recording and that the state intended to offer the recording into evidence. Defendant had filed a motion for discovery at the time of arraignment. Learning of the recording, defendant moved for its suppression. The court denied the motion but ordered a continuance.

On April 2, 1980, the court, on stipulation of the parties, allowed defendant to travel to Mississippi to care for his ailing mother and brother. Trial was set for October 27, 1980. Defendant failed to return to Oregon for the trial, and he was tried *in absentia*.[2]

---

[1] *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

[2] ORS 136.040 provides:

"If the charge is for a misdemeanor, the trial may be had in the absence of the defendant if he appears by his counsel; but if it is for a felony, he shall appear in person."

Defendant contends that he was denied his constitutional right to a speedy trial.[3] He was prepared for trial on March 17, 1980. The continuance was caused by the state's failure to comply promptly with discovery. He contends that his indigency prevented him from returning to Oregon for trial.

■ Whether defendant was deprived of his right to a speedy trial is governed by *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977). *Ivory* adopted the four-part test of *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972).

"Under *Barker,* to determine whether defendant's fourteenth amendment rights (incorporating the sixth amendment right to a speedy trial) have been denied, the court must balance four factors: (1) the length of the delay, (2) whether the defendant asserted his right to a speedy trial, (3) the reasons for the delay, and (4) prejudice to the defendant." *State v. Ivory,* 278 Or at 501.

*Barker* requires a balancing of all four factors. They are related and must be considered together. *State v. Ivory, supra,* 278 Or at 505; *State v. Burns,* 43 Or App 937, 940, 607 P2d 735 (1979).

■ Defendant concedes that the period of delay is less than eight months, that is, from the original trial date of March 17, 1980, until the trial on October 27, 1980. The eight month delay was not presumptively prejudicial.[4] Defendant timely asserted his right to a speedy trial. The delay was caused by the state, but there was no showing that the delay was intended to harass or gain some tactical advantage. The last factor is prejudice. In *State v. Burns,* 43 Or App 937, 941, 607 P2d 735 (1979), we said:

"Three types of prejudice arising from pretrial delays have been identified: the damage arising from prolonged incarceration while awaiting trial; the anxiety and public suspicion resulting from public accusation of a crime; and the hampering of ability to defend at trial where witnesses

---

[3] The right to a speedy trial is regulated by statute, ORS 135.747, and Art I, § 10, Oregon Constitution and the Sixth Amendment to the United States Constitution. Defendant's motion to dismiss was based on constitutional grounds.

[4] The length of delay is to some extent a triggering mechanism. There is authority that unless there is a delay that is presumptively prejudicial there is no need to inquire into the other factors of the balancing process. *United States v. Simmons,* 536 F2d 827 (9th Cir), *cert den* 429 US 854 (1976).

or records have disappeared or memories have dimmed. *Barker v. Wingo,* 407 US at 532-33."

*See also State v. Ivory, supra,* 278 Or at 507.

Only the inability to defend is at issue here. Defendant claims prejudice by reason of "* * * his inability to attend [the trial], aid defense counsel and possibly testify." There is nothing in the record to support that contention, except the unsworn statements of defense counsel. There is no evidence in this record to support any claim of prejudice, and we have found none. *See State v. Burns, supra,* 43 Or App at 941; *State v. Miebach,* 52 Or App 709, 718, 629 P2d 1312, *rev den* 291 Or 771 (1981).

"* * * [A] claim that a conviction must be reversed for delay reasonably calls for showing a more concrete likelihood that the delay was prejudicial to the defense." *Haynes v. Burks,* 290 Or 75, 82, 619 P2d 632 (1980).

Mere allegations of financial and tactical disadvantage are insufficient. *See United States v. Simmons, supra; see also United States v. Barney,* 568 F2d 134 (9th Cir), *cert den* 435 US 955 (1978). The motion to dismiss for lack of a speedy trial was properly denied.

■ Defendant argues that he was denied the opportunity to consult with an attorney before taking the breathalyzer test and that therefore the test results should have been suppressed. That assignment of error fails in view of *State v. Newton,* 291 Or 788, 636 P2d 393 (1981).

Defendant also contends that the trial court erred in failing to suppress tape recordings of his roadside responses during and after field sobriety tests.[5] The trial court found the tape recording admissible, because it was the result of a permissible on-the-scene investigation that was not custodial in nature. *See State v. Medenbach,* 48 Or App 133, 616 P2d 543 (1980), and cases cited therein.

Defendant was stopped at 11:40 p.m. At the officer's request, defendant performed the usual field sobriety tests. At some point, either during or immediately after the tests, the officer made a subjective determination that

---

[5] Defendant does not contend that the recording was admitted in violation of ORS 41.910 and ORS 165.540(1)(c). *See State v. Mathews,* 55 Or App 708, 639 P2d 705 (1982).

defendant was not free to leave the scene of the stop. There is no evidence that the officer so informed defendant. The breathalyzer checklist shows that at 11:45 p.m. the officer, while still at the scene, began the 15 minute pre-test observation time to conduct a breathalyzer test. Further tape recorded questioning of defendant followed, and at 11:57 p.m. he was told that he was under arrest and advised of his *Miranda* rights. Defendant argues that the officer intended to arrest defendant once the observations for purposes of the breathalyzer test began. He contends that he was in custody from that time forward until he was arrested and advised of his rights. He reasons that all tape recordings from 11:45 p.m. until the arrest should be suppressed, because they were the product of "custodial interrogation." *Miranda v. Arizona, supra.*

Defendant's contentions are resolved by *State v. Roberti,* 293 Or 59, 644 P2d 1104 (1982). There the defendant made an incriminating admission after the officer had formed, but not communicated, his intention to arrest the defendant. The Supreme Court held that the admission was not the product of custodial interrogation and was admissible. The court observed that the case law demonstrates the principle "that actual (not potential) custody or significant deprival of freedom is what triggers the *Miranda* safeguards." 293 Or at 70. In concluding its analysis of the meaning of custody, it stated:

"In summary, *Miranda,* and the subsequent cases of the United States Supreme Court and this court dealing with custody as that term is used in *Miranda,* hold that actual custody or deprival of liberty in a significant way greater than that involved in on-the-scene investigation is the triggering event for *Miranda* safeguards. In the absence of actual custody or a significant deprival of liberty, there is not the subjective pressure upon a defendant which inheres in actual custody that *Miranda* was intended to overcome. If an officer merely intends to restrict freedom or impose custody, but has not yet communicated that intention or converted it into action, the pressures with which *Miranda* deals have not necessarily come into being. It would be an unwarranted extension of *Miranda* to apply it to inchoate, contemplated custody that exists only as a subjective intention in the mind of the officer as to future action. Actual custody, not intended custody, is the so-called 'bright line' triggering device.

"* * * * *

"We therefore conclude that *Miranda* was intended to apply to custodial situations or those situations of deprival of freedom which are sufficient in degree and apparent indefiniteness to be similarly inherently coercive. To decide this case, we need not define the line with greater precision than in *Miranda;* here, it is sufficient to conclude that the *Miranda* definition of custody refers to restrictions of greater magnitude and apparent duration than exist in an ordinary investigative traffic stop such as this." 293 Or at 74-75.

▮ Under *Roberti,* defendant here was not in custody or significantly deprived of his freedom when the officer began the requisite breathalyzer test observations. *Miranda* procedures were not yet applicable. Defendant's admissions before he was arrested were made in an investigatory and not a custodial setting.

Affirmed.

**ROBERTS, J.** Pro Tempore, concurring.

I concur in the majority opinion only because the facts of this case do not indicate whether the officer's notation that at 11:45 p.m. he began the 15-minute observation time required before administering a breathalyzer test was made in the defendant's presence, so that the defendant was aware of it, or whether the notation was made at a police station after the fact. If the latter is the case, as the majority assumes, and the officer at the scene simply formed in his mind the determination to begin the observation period, without communicating the determination to defendant, then these facts are not distinguishable from *State v. Roberti,* 293 Or 59, 644 P2d 1104 (1982), in which the officer's subjective state of mind, *i.e.,* whether or not an intent had been formed to arrest or detain a defendant, was rejected as the sole criterion by which it is to be determined whether a defendant has been "taken into custody or otherwise deprived of his freedom of action in any significant way" so that *Miranda* warnings are required. *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

If, however, the officer's notation was made at the time the decision to administer the breathalyzer was made,

and in the presence of the defendant, so that the defendant was aware he was not free to leave, at least until the breathalyzer test was administered, then I believe this case would present the kind of "objective event" the court in *Roberti* said should be looked to for triggering *Miranda* procedures (293 Or at 65) and detention of the sort that is "inherently coercive in the way that formal custody is deemed to be inherently coercive." *State v. Roberti, supra,* 293 Or at 67.