Argued and submitted June 21, affirmed in part, reversed in part, and remanded November 14, 1985, reconsideration denied January 17, petition for review denied February 19, 1986 (300 Or 546)

## STATE OF OREGON,
*Appellant,*

*v.*

## PHARIS ANDREW TIMPY and ANNA LUCILLE TIMPY,
*Respondents.*

## (29152 and 29153; CA A34051)

709 P2d 739

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondents. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendants were separately indicted on multiple counts of arson, conspiracy to commit arson, attempted theft and conspiracy to commit theft.[1] The trial court dismissed the indictments with prejudice on the ground that defendants were denied their constitutional right to a speedy trial. Or Const, Art I, § 10; United States Constitution, Sixth and Fourteenth Amendments.[2] We affirm in part and reverse in part.

On August 27, 1982, a fire occurred in defendants' restaurant and lounge. In December, 1982, they were indicted for arson in the first degree in connection with that fire. They pleaded not guilty, and a trial was set for March 1, 1983. In early February, 1983, the state obtained, over defendants' objection, an order dismissing the original indictment without prejudice on the ground that the investigation had not been completed.

On February 17, an insurance adjuster interviewed Jamison, an alleged accomplice of defendants, who had testified before the grand jury. He told the adjuster that he had helped Hill set the fire. In September, 1983, Hill pleaded guilty to arson in the second degree and agreed to testify that defendants had offered him $5,000 to burn the restaurant.

On December 22, 1983, defendants waived indictment and were charged by information with arson in the second degree, again in connection with the August 27, 1982, fire. A trial was set for April 16, 1984. On January 26, 1984, the accomplice Jamison was killed. In March, 1984, there was a necessary substitution of counsel for one defendant. Trial was reset to July 23, 1984.

---

[1] Each indictment alleged three counts of arson in the first degree, ORS 164.325, one count of conspiracy to commit arson in the first degree, ORS 161.450; ORS 164.325, one count of attempted theft in the first degree, ORS 161.405; ORS 164.055, and one count of conspiracy to commit theft in the first degree. ORS 161.450; ORS 164.055.

Each defendant was named in the other defendant's indictment as co-conspirator along with John Eldon Hill, Jr., and James David Jamison in the conspiracy counts.

[2] The Sixth Amendment's guarantee of a speedy trial applies to state prosecutions through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 US 213, 87 S Ct 988, 18 L Ed 2d 1 (1967).

Late in June, 1984, the present indictments were returned. They include one first degree arson charge based on the August 27, 1982, fire (Count III), two first degree arson charges based on two alleged attempts before August 27 to burn the restaurant (Counts I and II) and charges of attempted first degree theft and conspiracy to commit arson and theft (Counts IV-VI). The state moved to substitute the indictments for the December, 1983, informations. Defendants opposed the motion, because they could not prepare a defense against the additional charges by the trial date. The trial court denied the motion to substitute and then granted the state's motion to dismiss the informations. Trial was set for November 13, 1984. On November 2, defendants moved to dismiss the indictments for lack of a speedy trial. The motion was granted.

■    A speedy trial claim is analyzed by weighing four factors, which are primarily factual inquiries: the length of the delay, the reason for the delay, defendants' assertion of their speedy trial right and the prejudicial effect of the delay. *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972); *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977). The state argues that, although the trial court properly invoked the test, it misapplied the test to the facts before it.

The first two *Barker* factors weigh against the state. The length of the delay in this case is almost two years.[3] All of it is attributable to the state, except for the three months caused by the substitution of defense counsel.[4] The third factor also weighs against the state. It is true that defendants did not assert their right to a speedy trial until two weeks before trial. However, we do not think that that failure was merely an attempt "to secure dismissals." *See State v. Meikle,*

---

[3] The state argues that the trial court misperceived the extent of the delay to which the constitutional right to a speedy trial applies. The state concedes, however, that this point was not clearly raised below, and we do not consider it. *See e.g., State v. Evans,* 290 Or 707, 713, 625 P2d 1300 (1981).

[4] The state appears to argue that the delays should not weigh against it, because it had no improper motive in seeking the delays. However, there is no requirement that the state have an improper motive. In *State v. Ivory,* 27 Or App 685, 688, 557 P2d 698 (1976), *rev'd on other ground,* 278 Or 499, 564 P2d 1039 (1977), we held that, although the delay was not intentionally caused, the state's failure to use diligence to shorten or eliminate the delay weighed against the state. As in *Ivory,* there is evidence here that the state could have shortened the delay. *See also State v. Evans,* 19 Or App 345, 349, 527 P2d 731 (1974).

44 Or App 91, 95, 605 P2d 301 (1980). Defendants could not have asserted the right before December, 1983, because the original indictments had been dismissed. Although defendants may have been able to assert the right after Jamison died, the arson in the second degree charges were dismissed by the state after the present indictments were returned. It is unclear why defendants waited from July, 1984, to November, 1984, to move to dismiss. That delay could be explained by the fact that the state had added new conspiracy and attempted theft charges in the last indictments. In any event, we agree with the trial court that defendants' resistance to the delays shows that they were actively seeking a speedy trial and not a late dismissal.

The final and the most difficult factor is whether defendants demonstrated a "reasonable possibility of prejudice." *State v. Ivory, supra,* 278 Or at 507. They argued, and the trial court ruled, that their ability to defend was impaired in that (1) due to Jamison's death, they were unable to impeach the testimony of Hill and (2) the state could impeach defense witnesses by attacking their ability to recall events that occurred approximately three years before (specifically, defendants' alleged earlier attempts to burn the restaurant, which are relevant to the two additional first degree arson charges (Counts I and II), and certain financial information relevant to defendants' motive for arson). We address the latter ruling first.

■　　　With respect to the financial information, we do not agree that a reasonable possibility of prejudice arose from the bank officer's inability to recall certain bank transactions involving defendants, because both the bank records and the victims of those transactions are available. However, after Counts I and II were added, defendants were placed in the position of having to controvert Hill's statement that he and one of the defendants had tried unsuccessfully to set fire to the restaurant on two earlier occasions. Defendants found defense witnesses,[5] but those witnesses were being asked to recall, for

---

[5] Defendants' employees would testify that there never was a previous fire and that they never smelled smoke during that time period. The owners of the hardware store in Union are prepared to controvert Hill's statement that he and one of the defendants repaired the damage from one of the alleged earlier fires by purchasing a piece of plastic hose at their store.

the first time, events which had occurred almost three years before.[6] The state might easily mitigate the effect of their testimony by emphasizing the time lapse. The state created a possibility of prejudice, because, before the addition of the new arson charges after a twenty-three month delay, defendants had no reason to attempt to rebut that part of Hill's statement. *See State v. Garcia,* 68 Or App 58, 61, 680 P2d 704 (1984). For these reasons, we hold that the trial court was correct when it dismissed Counts I and II.[7]

**3.**     We do not agree, however, that defendants demonstrated a reasonable possibility of prejudice as to the remaining counts. After examining the statements of Hill and the decedent Jamison, we conclude that there is no material discrepancy between the two as to where the fire was started. Hill told the police:

> "And then we went back in and poured this gasoline along the wall, the one that separates the dining room from the bar. Then we poured diesel along the top of it."

Jamison told the insurance adjuster:

> "[W]e brought the diesel and gas and we poured the diesel and gas across one wall and over the bar and down a little ways on another wall there."

Defendants also assert that there are other discrepancies between the two statements that defendants could have used to impeach Hill. We have been able to find only a few,[8] and they are so minor in the light of the overwhelming consistency of the two damaging statements quoted above as

---

[6] At least, the state has not pointed to anything in the record which indicates that defendants knew earlier about the pertinence of these witnesses.

[7] The state argues that a witness' inability to recall events in a manner consistent with the state's theory of the case can only inure to defendants' benefit. Assuming that that is true, it misses the mark. The testimony of a witness who can say, "No, it didn't happen the way the state says it did" benefits a defendant far more than one who can say only "I do not recall." Moreover, were we to agree with the state's argument, we would be holding in effect that the dimming of a witness' memory is not a cognizable type of prejudice. That holding would be contrary to *State v. Ivory, supra,* 278 Or at 508.

[8] Jamison stated that he alone had spread fuel to start the fire, but Hill stated that both of them did. Jamison stated that the fuel was present in the car when he got in it in Idaho, but Hill stated that he purchased the fuel after Jamison was a passenger. Jamison stated that he never spoke directly with defendant Pharis Timpy after the fire, but Hill said that Timpy told him that Jamison had.

to render them virtually useless for impeachment purposes. There was no reasonable possibility of prejudice and, in its absence, the other factors do not show a denial of the speedy trial right. The trial court erred in dismissing Counts III (first degree arson in connection with the August 27 fire), IV (conspiracy to commit first degree arson), V (attempted first degree theft) and VI (conspiracy to commit first degree theft).

Affirmed in part; reversed in part; remanded for trial on Counts III, IV, V and VI.