Argued and submitted November 4, 1993, resubmitted March 22, decision of the Court of Appeals reversed; judgment of conviction reversed and charge against defendant dismissed March 24, 1994

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## GORDON TUBANDT EMERY,
*Petitioner on Review.*

## (DC L90-0163CR; CA A69343; SC S40000)

869 P2d 859

Michael W. Seidel, Bend, argued the cause and filed the petition for petitioner on review.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

CARSON, C. J.

## CARSON, C. J.

In this criminal case, defendant seeks review of the decision by the Court of Appeals holding that defendant was not denied his right to a speedy trial under ORS 135.747 or under Article I, section 10, of the Oregon Constitution. We reverse. The judgment of conviction is reversed, and the charge against defendant is dismissed pursuant to ORS 135.747.

On October 31, 1988, defendant was cited for illegal possession of an elk, a crime.[1] On November 19, 1988, defendant appeared for arraignment at the time specified on the citation at the North Lake County Justice Court but, when he arrived, there was no one at the Justice Court.[2] Sometime later, the case was transferred to the South Lake County Justice Court.

During that time, defendant and the Lake County District Attorney pursued plea negotiations. Later, at the time of the hearing on defendant's motion to dismiss, the trial court found that the district attorney and defendant "did engage in good faith negotiations for a period of time after the charges were filed."[3]

Following the creation of a district court for Lake County (Or Laws 1989, ch 1021, § 5), the Justice Court for South Lake County apparently was abolished. Defendant's case was transferred to the new district court on July 1, 1990. Defendant's case was entered into the records of the district

---

[1] Knowing "possession of a game mammal closed season" is a Class A misdemeanor. *See* OAR 635-65-765(8) (setting forth rules for possession of game mammals); ORS 496.992(1) (violation of wildlife law or rule with a culpable mental state is Class A misdemeanor).

[2] At the hearing on defendant's motion to dismiss for lack of a speedy trial, the former North Lake County Justice of the Peace testified that, because he thought that he had a conflict of interest, he informed defendant's brother, a co-defendant, that he would not be at the courthouse on November 19 and asked the co-defendant to notify the other defendants. The co-defendant testified that the conversation with the justice of the peace took place after November 19. Regardless, there was nothing in the record indicating that defendant received notice that the justice of the peace would not be present for arraignment on November 19, 1988.

[3] The last documented negotiation letter was dated January 1989. It is unclear, however, whether, or how long, plea negotiations extended beyond the date of the letter.

court on August 8, 1990, and was set for trial beginning October 17, 1990.

On September 7, 1990, defendant moved to dismiss for lack of a speedy trial. On October 25, 1990, the district court held a hearing on defendant's motion to dismiss. At that hearing, defendant testified that the pending charges had made him "somewhat" nervous.[4] He also testified that he felt "tainted around town."

At the hearing, there also was testimony that one potential witness had died during the summer of 1990, while this case was awaiting trial. The potential witness was one of several people who had come upon an elk kill site early in the morning on the first day of the 1988 elk season. At the hearing, defendant's lawyer summarized, "[The witness] is dead. We don't know what he would have testified to. We don't know if he would have been helpful to the state or if he would have been helpful to the defendants. The fact of the matter is, he is not available to testify."

On November 7, 1990, the trial court denied the motion to dismiss by letter. The trial court's letter opinion, which was incorporated by reference into its order, stated, in part:

"The court and the District Attorney have certainly not moved these cases with the dispatch urged by the prevailing guidelines for case disposition. However, it is my opinion that the delay, unfortunate as it is, is not grounds for dismissing any of these charges.

"* * * * *

"All defendants have been subjected to anxiety during the pendency of the charges, and memories have faded. One witness has died, but that witness apparently saw nothing that wasn't seen by other witnesses and would probably be a witness for the state in any event.

"The anxiety felt by the defendants and the memory loss by the witnesses are within the normal range for cases of this type, and are not justification for dismissal."

---

[4] When asked if he thought about the pending charges at night, defendant replied, "Well, I haven't worried that much about them."

Following the denial of the motion to dismiss, defendant's lawyer moved to withdraw, the court allowed the motion, and defendant informed the court that he would represent himself. After a jury trial, on February 26 and 27, 1991, defendant was convicted of the charged offense. On April 5, 1991, the district court entered judgment and sentenced defendant.

Defendant appealed his conviction to the Court of Appeals, assigning as error the trial court's denial of his motion to dismiss based on the speedy trial claims. The Court of Appeals affirmed defendant's conviction, holding that both ORS 135.747 (set forth *infra*) and Article I, section 10, of the Oregon Constitution,[5] required defendant to show prejudice in order to prove that he was deprived of his right to a speedy trial.[6] *State v. Emery*, 115 Or App 655, 657-58, 840 P2d 95 (1992), *mod*, 117 Or App 565, 842 P2d 467 (1993). The Court of Appeals held that "[d]efendant makes no claim of actual prejudice"; thus, neither ORS 135.747 nor Article I, section 10, was violated by the two-year delay in bringing defendant to trial. 115 Or App at 658-59.

On reconsideration, the Court of Appeals modified its opinion to hold that defendant did make a claim of actual prejudice when he asserted that a potential witness had died, that other witnesses' memories had faded, that he had suffered anxiety and had felt "tainted about town," and that his travel plans had been interrupted by the pending criminal charge. *State v. Emery*, 117 Or App 565, 567, 842 P2d 467 (1993), *on recon from* 115 Or App 655, 840 P2d 95 (1992). Nonetheless, the Court of Appeals adhered to its decision and held that defendant's allegations of prejudice were not sufficient to require

---

[5] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and *without delay*, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." (Emphasis added.)

The guarantee of "a trial without delay is equated to the right to a speedy trial." *State v. Jackson*, 228 Or 371, 377, 365 P2d 294 (1961).

[6] The Court of Appeals relied on *State v. Jackson, supra*, 228 Or at 377, for the proposition that the statute and the constitution have "substantially the same meaning." *State v. Emery*, 115 Or App 655, 657, 840 P2d 95 (1992), *mod* 117 Or App 565, 842 P2d 467 (1993).

dismissal under ORS 135.747 or Article I, section 10. 117 Or App at 568.[7]

■       Before this court, defendant first argues that the Court of Appeals erred in holding that the speedy trial provision contained in ORS 135.747 requires that defendant make a showing of prejudice resulting from the delay. ORS 135.747 provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

It is the task of this court to determine what the legislature intended when it enacted ORS 135.747. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (setting forth method of statutory interpretation). To determine legislative intent, we first examine the text and context of the statute. 317 Or at 610-11.

Defendant argues that the text of ORS 135.747 is clear and that the express language of ORS 135.747 does not suggest any legislative intent to require a showing of prejudice. The language of the statute requires that, if the defendant is not brought to trial within a "reasonable period of time" and that if the trial is not postponed upon the application of or with the consent of the defendant, "the court *shall* order the accusatory instrument to be dismissed." (Emphasis added.)

ORS 174.010[8] directs judges, when engaged in statutory construction, "not to insert what has been omitted."

---

[7] Defendant also assigned as error the trial court's acceptance of defendant's waiver of his right to counsel under Article I, section 11, of the Oregon Constitution. Article I, section 11, provides, in part: "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel."

Defendant argued that his waiver of his right to counsel was not "intelligent and competent" and, therefore, was not valid. The Court of Appeals found that this argument did "not require discussion" and affirmed without further comment. *State v. Emery, supra*, 115 Or App at 659. In light of our decision on defendant's first assignment of error, we need not reach the second assignment of error.

[8] ORS 174.010 provides, in part: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted."

ORS 135.747 does not explicitly require a showing of prejudice. Therefore, this court must proceed cautiously in examining the state's argument that the legislature intended to require a showing of prejudice when it prescribed dismissal of the accusatory instrument if a defendant is not brought to trial in a reasonable period of time.[9]

The context of ORS 135.747 also suggests that a showing of prejudice is not necessary. The context of a statute "includes other provisions of the same statute and other related statutes." *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611. ORS 135.745 provides:

"When a person has been held to answer for a crime, if an indictment is not found against the person within 30 days or the district attorney does not file an information in circuit court within 30 days after the person is held to answer, the court shall order the prosecution to be dismissed, unless good cause to the contrary is shown."

ORS 135.745 is the statutory speedy trial provision that applies before an accusatory instrument is returned or filed, and ORS 135.747 is the provision that applies after the accusatory instrument is returned or filed. ORS 135.745 does not require a showing of prejudice. If an accusatory instrument is not filed within 30 days, the court must dismiss the case unless the prosecution is able to show good cause for not filing within 30 days.[10] Read together, ORS 135.745 and 135.747 provide guidelines for the trial court for dismissing cases that have been in the system too long without prosecutorial action. Prejudice to the particular defendant is irrelevant.

ORS 135.753(2) provides that an order of dismissal pursuant to ORS 135.745 or ORS 135.747 "is a bar to another prosecution for the same crime if the crime is a Class B or C misdemeanor; but it is not a bar if the crime charged is a Class

---

[9] The state argues that the word "reasonable" carries with it an intention by the legislature to require a defendant to make a showing of prejudice. The transformation of the word "reasonable" into the word "prejudice" is not clearly supported on the face of the statute.

[10] This court emphasized that point in *State v. McCormick,* 280 Or 417, 423, 571 P2d 499 (1977): "There is no doubt under ORS 135.745 that an order holding a defendant to answer must be dismissed after 30 days in the absence of an indictment or information, or a showing of good cause."

A misdemeanor or a felony." Taken as a whole, the statutory speedy trial scheme provides a method for dismissing cases that are languishing in the criminal justice system without affecting the state's ability to reprosecute serious charges. ORS 135.745, 135.747, and 135.753(2) provide a "house-cleaning" mechanism triggered by the length of time that a particular case has been in the system, rather than by the effect of the delay on a particular defendant.

The state argues that, to the contrary, *State v. Jackson*, 228 Or 371, 377-78, 365 P2d 294 (1961), stands for the proposition that Article I, section 10, and ORS 135.747 should be read to mean the same thing and, therefore, that a speedy trial claim under ORS 135.747 requires a showing of prejudice. This court held in *Jackson*:

> "It follows that the statute and the constitutional provision have substantially the same meaning and, therefore, that the tests heretofore announced by this court which are to be applied in determining whether an accused has been deprived of his right to a speedy trial under the constitution are likewise the tests under the statute."[11] 228 Or at 377-78.

What the state's argument fails to recognize is that the jurisprudence of constitutional speedy trial inquiries has changed significantly since *State v. Jackson, supra*. At the time of *Jackson*, a speedy trial under the constitution was a "trial conducted according to fixed rules, regulations, and proceedings at law, free from vexatious, capricious, and oppressive delays." *Id.* at 378 (quoting *State v. Kuhnhausen*, 201 Or 478, 513, 266 P2d 698, *withdrawn* 201 Or 506, 272 P2d 225 (1954)). Under *Jackson*, the constitutional inquiry was a broad one — the court asked whether the defendant had been afforded a speedy trial "in the light of the circumstances of each particular case as a matter of judicial discretion." 228 Or at 378 (quoting *State v. Kuhnhausen, supra*). In addition, the court defined "reasonable time," as used in the statute, to be "such length of time as may reasonably be allowed or required having regard to attending circumstances." *Id.* at 377. Thus, both the constitutional and statutory tests

---

[11] The statute that the court referred to was ORS 134.120, which subsequently was renumbered to be ORS 135.747, but which remained materially the same in substance except that ORS 134.120 only applied to cases where the defendant had been charged by indictment.

adopted by *Jackson* were loose inquiries into the totality of the circumstances determining what was a reasonable amount of time in which to bring a criminal defendant to trial. In *Jackson*, there was no mention of prejudice to the defendant.[12]

Since *Jackson*, the constitutional test has changed significantly. After *Jackson*, this court held that Article I, section 10, "should be given the same construction as the guarantee of a speedy trial contained in the Sixth Amendment to the Constitution of the United States." *State v. Evans*, 249 Or 314, 317, 432 P2d 175, *cert den*, 390 US 971, 88 S Ct 1093, 19 L Ed 2d 1182 (1968) (citing *State v. Vawter*, 236 Or 85, 90, 386 P2d 915 (1963)). In 1972, the Supreme Court of the United States established a test balancing four factors to determine whether a criminal defendant had been deprived of his or her right to a speedy trial. *Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972). The four *Barker* factors are: (1) length of the delay, (2) the defendant's assertion of his or her right to a speedy trial, (3) the reason for the delay, and (4) prejudice to the defendant. 407 US at 530. In *State v. Ivory*, 278 Or 499, 504, 564 P2d 1039 (1977), this court affirmed that the "analysis used by the Supreme Court in *Barker* is appropriate to test the guarantee of Article I, section 10, of our Constitution."[13]

Although prejudice might have been part of the totality of the circumstances under the *Jackson* test, the *Barker* test introduced prejudice to the defendant as an explicit factor in the speedy trial inquiry under Article I, section 10. At the same time that this court adopted the *Barker* test, it also announced that "the remedy available for a violation of the Article I, section 10, guarantee should be equivalent to the federal remedy under [*Strunk v. United States*, 412 US 434, 440, 93 S Ct 2260, 37 L Ed 2d 56 (1973)]

---

[12] This court affirmed the trial court's denial of the defendant's motion to dismiss because the defendant had caused most of the delay himself by firing two court-appointed lawyers, and attempting to fire a third. *State v. Jackson, supra*, 228 Or at 381. There was no inquiry into prejudice to the defendant.

[13] This court later held that it was "mistaken in adopting the second factor — 'whether defendant asserted his right to a speedy trial.' " *State v. Dykast*, 300 Or 368, 375 n 6, 712 P2d 79 (1985). Thus, the other three *Barker* factors make up the speedy trial inquiry under Article I, section 10. *See State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987) (setting forth three-factor test).

(dismissal with a bar to reprosecution)." *State v. Ivory, supra*, 278 Or at 505.

At that point, the speedy trial provision under Article I, section 10, and the speedy trial provision under ORS 135.747 took divergent paths. The free-ranging "reasonableness" inquiry of *Jackson* was no longer in place, and the statutory and constitutional schemes became significantly different. In *Ivory* itself, this court made clear that the speedy trial statute and the constitution required separate inquiries. This court summarized:

> "A finding that ORS 135.747 was violated would allow reprosecution by the state. On the other hand, if it is found that defendant's constitutional entitlement to a speedy trial has been denied, the remedy is dismissal, which is a bar to further prosecution for the same offense." 278 Or at 503.

This court made the distinction between the statute and the constitution even more clear in *Haynes v. Burks*, 290 Or 75, 83, 619 P2d 632 (1980). In that case, this court stated:

> "Short of the kind of prejudice, extreme delay, or purposeful prosecution obstruction for which the Supreme Court would require dismissal, there is no reason why pretrial remedies should not include * * * dismissal without prejudice, as provided in ORS 135.745 and 135.747.
>
> "* * * * *
>
> "These standards and remedies apply in advance of a constitutional issue. If they did not apply to a delay short of a constitutional violation requiring final dismissal, the statutory provisions for a dismissal subject to renewal of the prosecution would be meaningless. * * * And insofar as the statutory dismissal of charges does not bar renewed charges in the case of serious crimes, it may not be an adequate remedy when the delay reaches unconstitutional dimensions." 290 Or at 83-84.

The court went on to hold that, if the defendant were detained any longer without trial, ORS 135.747 required dismissal without prejudice pursuant to ORS 135.753(2). *Haynes v. Burks, supra*, 290 Or at 88. The court also held that, to the contrary, defendant was not entitled to dismissal with prejudice under Article I, section 10, stating that, "short of an extreme and wholly unjustified passage of time, that remedy is required when there has been purposeful prosecution delay

or *probable prejudice to the defense." Id.* at 90. (Emphasis added.)[14]

Thus, it is clear that the constitutional and statutory speedy trial provisions serve different purposes and provide different remedies. The overall scheme is coherent in that it provides that if a particular case takes an unreasonable length of time to come to trial, the court must dismiss it, regardless of prejudice to the particular defendant, but it allows the state to refile the case if it involves a serious crime. If, however, the defendant is prejudiced by the delay, and the other two *Barker* factors are present, the case must be dismissed, and the state loses its opportunity to reprosecute the charge under Article I, section 10.

In summary, we hold that ORS 135.747 does not require a defendant to make a showing of prejudice. If a case has not been brought to trial within a reasonable period of time, and the trial was not delayed upon application of the defendant or with the consent of the defendant, the court must dismiss the case, regardless of whether the defendant was prejudiced.

■ With that understanding, the dispositive inquiry becomes whether this defendant's right to a speedy trial under ORS 135.747 was violated. Although the state points out that defendant was engaged in ongoing plea negotiations with the state for some period of time, the record would not support a finding that defendant either occasioned or acquiesced in the two-year delay.[15] In addition, at oral argument, the state conceded that the delay was attributable to the state.

In the circumstances of this case, the nearly two-year delay in bringing this citation to trial was not "reasonable" under ORS 135.747.[16] In its opinion letter denying the

---

[14] In another speedy trial case, this court again separated the constitutional and statutory inquiries and declined to determine whether there was a violation of ORS 135.747 because defendant sought an outright dismissal with prejudice under the constitution. *State v. Dykast, supra,* 300 Or at 374.

[15] Defendant's first trial date was scheduled for October 17, 1990. The trial was rescheduled for February 1991, after the trial court denied defendant's motion to dismiss.

[16] The parties have treated the day that the citation was issued, October 31, 1988, as the starting point for examining the delay in this case, and so shall we.

motion to dismiss, the trial court found that "[t]he court and the District Attorney have certainly not moved these cases with the dispatch urged by the prevailing guidelines for case disposition."[17] This case involved a simple misdemeanor citation and, during most of the delay, the case was sitting without any action to bring the case to trial by either the prosecutor or the courts.

Defendant, without his consent or application, was not brought to trial on the charge of illegal possession of an elk within a reasonable period of time. Thus, defendant was denied his right to a speedy trial under ORS 135.747, and the trial court erred in not dismissing the charge.[18]

■　As we stated above, the remedy for a violation of ORS 135.747 is *dismissal without prejudice*. On the other hand, if defendant were denied his right to a speedy trial under Article I, section 10, the remedy would be *dismissal with prejudice*. Although we hold that defendant was denied his right to a speedy trial under ORS 135.747, we also must reach defendant's claim that his right to a speedy trial was violated under Article I, section 10, of the Oregon Constitution because, were we to find such a violation, only dismissal with prejudice adequately would remedy the constitutional violation. *See State v. Ivory, supra,* 278 Or at 503 (holding that resort to

---

[17] On May 1, 1990, the Oregon Judicial Conference adopted the Oregon Standards of Timely Disposition. Although those standards do not in any way define the scope of a speedy trial under the statute or the constitution, they are informative in determining the length of time that is "reasonable" in which to bring a case to trial. The standards recommend that, in district court, "90% of all misdemeanors, infractions and other nonfelony cases should be adjudicated or otherwise concluded within 90 days from the date of arraignment, 98% within 180 days and 100% within one year, except for exceptional cases in which continuing review should occur." We do not suggest that ORS 135.747 turns on this standard. Nonetheless, nearly two years between citation and the first scheduled trial date (and two years and five months between citation and conclusion of the matter) was significantly outside the goals set by the Judicial Conference, and such a divergence suggests that the length of delay was not reasonable.

[18] Because defendant was charged with a Class A misdemeanor, the state is entitled to reprosecute the charge under ORS 135.753(2). Nonetheless, the state may be time-barred from reprosecuting the charge against defendant. *See* ORS 131.125(5)(b) *(former* ORS 131.125(2)(b) (1987)) (requiring that prosecution for a misdemeanor be commenced within two years of commission of offense). Although we note that defendant's original trial did not occur until more than two years after the date of the offense, the time-bar issue is not now before the court; thus, we decline to address it.

ORS 135.747 does not adequately resolve a constitutional speedy trial claim).

As stated above, "[u]nder Article I, section 10, of the Oregon Constitution, the factors to be considered in evaluating the usual speedy trial claim are: (1) the length of the delay, (2) the reasons for the delay and (3) the resulting prejudice to the accused." *State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987).

Under the test set forth in *Mende*, "[i]f the time taken to bring an accused to trial is substantially greater than the average, inquiry into the remaining two factors is triggered." 304 Or at 23-24. This case took significantly longer than the average to come to trial.[19] Thus, an inquiry into the reason for the delay and prejudice to the defendant is appropriate.

As the state conceded at oral argument, the delay in bringing this case to trial is attributable to the state.[20] Although the responsibility for the delay is with the prosecution, defendant does not allege that the delay was intentional on the part of the state. *See id.* at 25 (if delay was designed to hamper defense, no showing of actual prejudice necessary). As this court held in *State v. Dykast, supra*, evidence of intentional actions weighs much more heavily against the state than "inadvertent or negligent conduct." 300 Or at 377. Here, most of the delay in defendant's case occurred because the case was transferred between two justice courts and finally transferred to a newly created district court. As this court recognized the district attorney's heavy caseload in

---

[19] In 1991 (the first year for which district court statistics were tabulated), the mean time from filing of the accusatory instrument until trial for misdemeanor cases in Oregon district courts was 147.3 days. In Lake County, the mean time was 200.3 days. In 1992 and 1993, the mean time between charging and trial in the Lake County District Court was 303 and 385 days, respectively. Statewide, the mean time for misdemeanors in district courts was 150.9 and 155.5 days in 1992 and 1993, respectively. Cases Tried Analysis, Trial Court Programs Division, Office of State Court Administrator, Oregon Judicial Department Statistical Reporting (1993).

Although Lake County cases ordinarily took over twice as long to come to trial as in the state as a whole, this case took twice as long as even the average misdemeanor case in Lake County.

[20] As stated above, the delay between the original trial date of October 17, 1990, and the ultimate trial date of February 26, 1991, was attributable to the defense motion to dismiss and other motions. Nonetheless, the nearly two-year delay between citation and the original trial date is entirely attributable to the state.

*Dykast*, 300 Or at 377, we also recognize that there was significant confusion in Lake County at the time that the justice courts were eliminated and the district court was created. Although that confusion does not excuse the two-year lag in bringing defendant's case to trial, it also does not show any intentional misconduct on the part of the prosecutor.

Ultimately, the inquiry in this case turns on the third factor — whether defendant was prejudiced by the delay. There are three possible types of prejudice to a defendant: excessive pretrial incarceration, anxiety and concern of the defendant, and impairment to the defense. *Id.* at 378. Defendant was not incarcerated while awaiting trial on this charge, but he claims that he suffered both of the other types of prejudice.

Defendant asserts that he suffered stress and anxiety from the pending charges, that he was tainted in his community, and that his travel plans were interrupted by the pending case. The prejudice defendant alleges here appears to be relatively insignificant. Although defendant testified that he was somewhat nervous about the charges and that he thought about the charges from time to time, he also said, "Well, I haven't worried that much about them." Defendant did testify that he felt tainted around town by the pending charge because it implied that he was guilty of the charge. Some of the prejudice created by that taint, however, was vitiated by the fact that defendant ultimately was convicted of the charge. The taint about which defendant complained would not have been alleviated by bringing the case to trial earlier. In addition, the travel plans that defendant decided to forego because of the pending charge were for a vacation in December 1988. The decision to forgo the vacation was not affected by the *delay*[21] and, therefore, does not affect the speedy trial inquiry. We recognize that delay adds to the ordinary anxiety and inconvenience caused by the pending criminal charge, however, there was no cognizable prejudice to defendant.

Defendant also claims that he suffered "actual prejudice" to his ability to prepare a defense caused by the delay in bringing this case to trial. Defendant asserts that a potential

---

[21] Defendant does not argue that his case should have come to trial during November 1988, the month after he was first cited.

witness died before the case could come to trial. In its ruling, the trial court found: "One witness has died, but that witness apparently saw nothing that wasn't seen by other witnesses and would probably be a witness for the state in any event." The potential witness was one of several people who came upon the kill site early in the morning on the first day of elk season. Defendant offered no evidence to show how the witness could have assisted him in preparing his defense.[22]

Defendant also argues that his ability to defend himself was harmed because witnesses' memories were impaired by the passage of two years. Undoubtedly, it is true that witnesses could have remembered events more clearly at a time nearer to the citation.[23] But, defendant does not explain specifically how his ability to defend himself was prejudiced by the faded memories. Thus, defendant has failed to show that the delay between the time defendant was cited and the time he was brought to trial "created a reasonable possibility of prejudice to [defendant's] defense." *Haynes v. Burks, supra,* 290 Or at 90 (applying defendant's burden to prove prejudice). Defendant has not been deprived of his right to a speedy trial under Article I, section 10, and is not entitled to dismissal with prejudice.

The decision of the Court of Appeals is reversed. The judgment of conviction is reversed, and the charge against defendant is dismissed pursuant to ORS 135.747.

---

[22] Defendant argues that the potential witness possibly could have provided impeachment evidence against the people the witness was with on the first day of elk season. Defendant offers no evidence, however, that the potential witness would have or could have offered any such impeachment information. His assertion is merely speculative.

[23] Several of the original defendants testified that their memories had faded. In addition, one police officer said that he had to rely on his notes to testify. He followed up by saying, however, that he often refers to his notes in testifying, regardless of how long it takes the case to come to trial.