Argued and submitted February 23; decision of Court of Appeals affirmed, judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings November 10, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

CHRISTOPHER SHANE RALSTON,
aka Christopher Wayne Ralston,
*Petitioner on Review.*

(CC 16CR33180) (CA A165924) (SC S068727)

520 P3d 866

Defendant was arrested and charged with misdemeanor driving under the influence of intoxicants (DUII) and reckless driving. The charges were dismissed and, 40 days later, defendant was indicted on the charges of felony DUII and reckless driving. During that period, the video recording of defendant's booking was overwritten automatically. When defense counsel later learned that the evidence was lost, defendant moved to dismiss the charges on constitutional speedy-trial grounds, arguing that the delay caused the loss of the video and thereby prejudiced the defense. The trial court denied the motion and the Court of Appeals affirmed. *Held*: To prove a constitutional speedy-trial violation, a defendant must prove prejudice resulting from the delay, and, in this case, even if the 40-day delay in indicting defendant was unreasonable, defendant had not demonstrated a causal connection between that delay and the loss of the booking video and the ensuing prejudice to defendant.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Kyle Krohn, Senior Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Deputy Defender.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the brief for respondent on review. Also

_____

* Appeal from Multnomah County Circuit Court, Richard C. Baldwin, Judge. 310 Or App 470, 486 P3d 822 (2021).

on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NELSON, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**NELSON, J.**

In this criminal case, defendant was arrested, booked, and charged by district attorney's information with misdemeanor driving under the influence of intoxicants (DUII) and reckless driving. Five days later, the prosecutor dismissed the misdemeanor charges to investigate whether defendant had predicate convictions that would have elevated the charge to felony DUII. Six weeks later, a grand jury indicted defendant on a charge of felony DUII. By that time, video footage from the jail on the night that defendant was arrested and booked had been overwritten automatically. When defense counsel later learned that the booking video had been overwritten, defendant moved to dismiss the charges against him on the ground that his right to a speedy trial under Article I, section 10, of the Oregon Constitution had been violated, arguing that his inability to use the video of his booking at trial was prejudicial to him. The trial court denied the motion and the Court of Appeals affirmed. *State v. Ralston*, 310 Or App 470, 486 P3d 822 (2021). We allowed review and, for the reasons that follow, we affirm the decision of the Court of Appeals, and we affirm in part the judgment of the trial court.[1]

The following facts are undisputed. Shortly after midnight on June 3, 2016, defendant was arrested for DUII. Defendant had bloodshot and watery eyes, smelled of alcohol, and had multiple open containers of alcohol in his car. He refused to submit to a breath test. Two hours later, he was booked into jail. The booking area has several video cameras that record footage of individuals going through the booking process. That footage is kept for at least 30 days and then is overwritten automatically by the recording system, starting with the oldest videos.[2]

---

[1] In the Court of Appeals, defendant also challenged the trial court's imposition of a $2,255 fine in the judgment, when it had orally imposed a $2,000 fine at sentencing. The state conceded that the trial court erred in that regard and the Court of Appeals accepted the concession. The Court of Appeals therefore vacated the portion of the judgment imposing the $2,255 fine and remanded the case for resentencing. *Ralston*, 310 Or App at 472. That part of the Court of Appeals' decision is not at issue before this court, and we do not discuss it further.

[2] The sheriff's office was required to keep booking video recordings for 30 days, but the sheriff's office could not determine precisely when the videotape of defendant's booking was overwritten.

On the day of defendant's arrest, defendant was arraigned and charged by district attorney's information with DUII and reckless driving. He was appointed counsel and taken into custody. The prosecutor soon determined that defendant might have had two previous DUII convictions, which would elevate the DUII charge against defendant to a felony. ORS 813.011(1) (DUII is a felony if, in the preceding 10 years, a defendant has had two previous convictions under Oregon's DUII laws or their statutory counterpart in another jurisdiction). On June 7, in an effort to avoid a felony DUII conviction, defendant requested a hearing for June 8 to plead guilty to the misdemeanor charges. In response, the state moved to dismiss the information, to give it time to investigate whether a felony charge was warranted. The court granted the state's motion and ordered that defendant be released.

On June 9, the felony DUII prosecutor received a case file that included defendant's prior conviction records. For reasons that are not explained in the record, the prosecutor did not review the file until July 8. At that point, the prosecutor confirmed that defendant could be charged with felony DUII, and, on July 19, 2016, a grand jury indicted defendant on that charge, based on the June 3 incident and two previous Washington state convictions for DUII, one in 2012 and the other in 2014.[3] A judge issued a statewide arrest warrant the same day. The sheriff's office entered the warrant into various databases the following day and, on July 29, asked two different law-enforcement agencies in Washington, where defendant lived, to serve the warrant.

On January 4, 2017, the Multnomah County Sheriff's Office learned that defendant was in custody in Washington on unrelated charges, and defendant was arrested on the DUII indictment at issue. The following day, defendant waived extradition and consented to being returned to Oregon to answer the charges here. Defendant was transported to Oregon on March 16, 2017, and he was arraigned the following day. Counsel was appointed at that time. After viewing the police report obtained in discovery, defense counsel requested a copy of the videotape

---

[3] Defendant also was indicted on the reckless driving charge.

of defendant's June 3, 2016, booking, and, on May 1, 2017, learned that the videotape had been overwritten and no longer existed.[4]

Defendant moved to dismiss the charges against him on speedy-trial grounds, under Article I, section 10, of the Oregon Constitution. Article I, section 10, provides:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Defendant's motion emphasized the state's unexplained delay in obtaining an indictment and serving the warrant, but his argument primarily focused on the prejudice to him resulting from the delay. Specifically, defendant argued that the loss of the booking video was prejudicial because it might have shown that he had exhibited ordinary balance and coordination two hours after he drove, and, for that reason, his inability to use the video at trial was likely to harm his defense. In support of his motion, defendant offered a declaration from his lawyer stating that she had reviewed the arresting officer's police report and had noted that it did not describe defendant as exhibiting poor balance or coordination. On that basis, she averred, she expected that the booking video would prove helpful to the defense at trial. She further stated that, in past DUII cases, she had obtained and offered into evidence Multnomah County Sheriff's Office jail booking videos, because they can demonstrate a defendant's ability or inability to walk, follow directions, and stand in balance. She also stated that "it is not uncommon for a jail booking video to show a Defendant standing on one foot and removing a shoe while maintaining balance." Finally, she stated that, in her experience, those booking videos are "uniquely persuasive" as objective evidence at DUII trials.

Defendant also offered an affidavit from a sheriff's office employee explaining the booking area videotaping and overwriting process. Defendant did not introduce a copy of the police report or present testimony from the arresting

---

[4] The parties agree that the booking video was overwritten sometime after July 3, 2016, (30 days after the booking) and before defendant's indictment on July 19, 2016.

officer to make a record of what the officer would say. Nor did he introduce an example of what a booking video would look like.

On August 18, 2017, the trial court held a hearing on defendant's motion to dismiss. After hearing argument from both sides, the trial court denied the motion. The court noted that the delays in this case were not exceptional and, in particular, that the "month or so" delay between arrest and indictment was not an unusual length of time. Ultimately, the court concluded that, even if the delay were unreasonable, defendant had not made an adequate factual showing that the lost video recording would have been helpful to the defense. In so doing, the court accepted defense counsel's representation about what the video "would have shown—normally for people," but "without regard to what it particularly would have shown" with respect to defendant. Defendant subsequently entered a conditional guilty plea to felony DUII in exchange for dismissal of the reckless driving charge, reserving his right to appeal the denial of his motion to dismiss on speedy-trial grounds.

Defendant appealed the denial of his motion to dismiss, reprising his state constitutional arguments. The Court of Appeals affirmed that part of the trial court judgment.

As an initial matter, the Court of Appeals noted that defendant had asked it to determine whether the speedy-trial clock began to run on the day that the misdemeanor information was filed or on the day that he was indicted, which is an open question in Oregon. The court concluded that it need not decide that issue in this case, because, as it later explained, even assuming that the speedy-trial clock started to tick at the time that the misdemeanor information was filed and was not reset by the dismissal of the information and defendant's subsequent indictment on the felony charge, defendant had failed to prove that he suffered sufficient prejudice from the delay to warrant dismissal under Article I, section 10. *Ralston*, 310 Or App at 477, 495.

As to that principal issue, the court stated that, in determining whether a defendant was denied the constitutional right to justice without delay, a court considers three factors: the length of the delay, the reasons for the delay,

and the prejudice to the defendant resulting from the delay. *Id*. at 477 (citing *State v. Emery*, 318 Or 460, 472, 869 P2d 859 (1994)). With respect to the first factor, length of the delay, the court noted that a delay, in and of itself, may be sufficient to establish a violation of the constitutional guarantee of a speedy trial. *Id*. In *State v. Vawter*, this court stated that delay alone may violate a defendant's speedy trial right if "such a period of time [passes] that the thought of ordering the defendant to trial shocks the imagination and the conscience." 236 Or 85, 96, 386 P2d 915 (1963) (internal quotation marks omitted). Here, the Court of Appeals stated, although the delay was not so "manifestly excessive" that it "shocks the imagination and the conscience," so as to be dispositive on its own, the state had conceded that the 14-month period from the misdemeanor indictment in June 2016 to defendant's guilty plea in August 2017 was not so insignificant that the court need not consider the reasons for the delay and the prejudice to defendant. *Ralston*, 310 Or App at 479.

With respect to the reasons for the delay, defendant had argued that the state had failed to explain the entire 14-month period leading up to the hearing and guilty plea, and, therefore, that length of time was unreasonable, and that factor weighed against the state. The court disagreed, concluding that the state had failed to explain three and one-half months of the delay; the remaining period of delay was explained, reasonable, and justified. *Id*. Specifically, the court found that the period between June 9, 2016, when the prosecutor received the file containing evidence of defendant's prior DUII convictions, and July 8, when the prosecutor reviewed that file, was unexplained, and, because the booking video was lost during that period, that period weighed against the state. *Id*. at 480. As the court explained,

> "[T]he video was likely destroyed after the [prosecutor] received defendant's file but before she had reviewed it. In other words, as the parties agree on appeal, it was that 30-day delay that caused the destruction of the video. In that light, we cannot conclude that the state adequately explained this delay[.]"

*Id*.

The next period of delay that the court examined was the five-and-one-half-month period between July 19, 2016, the day that the warrant was issued for defendant's arrest, and January 4, 2017, when the sheriff's office learned that defendant was in custody in Washington on unrelated charges. The court found that Oregon officials had acted promptly in obtaining the warrant and in seeking assistance from and coordinating with Washington law-enforcement agencies, and, therefore, that that period was explained and reasonable. *Id*. at 480-81.

The court then examined the two-and-one-half-month period between January 5, 2017, the day that defendant signed the waiver of extradition, and March 16, 2017, the day that he was transported to Oregon to face the present charges. The court found that that delay might have been due to a number of factors, some weighing in favor of the state, but that the state had not carried its burden to explain the reasons for the delay. Therefore, the court concluded, that period was unexplained and weighed against the state. *Id*. at 482.

Finally, the court examined the period between March 16, 2017, the day that defendant was transported to Oregon, and August 18, 2017, the day of the hearing on defendant's motion to dismiss. The court found that that period, totaling approximately five months, was reasonable. The court noted that defendant was arraigned and released from custody and counsel was appointed within a day of his return to Oregon, and the remaining period before the hearing was not unusual and was attributable in part to defendant's motion to dismiss. *Id*.

In sum, the court concluded, approximately three and one-half months of the 14-month delay was unexplained and weighed against the state. The remaining approximately 11 months of the delay were explained and the result of reasonable and justifiable causes. Therefore, the court held, the reasons-for-the-delay factor did not weigh in favor of dismissal. *Id*. at 483. Thus, according to the court, defendant's claim rested on whether he had established sufficient prejudice to warrant dismissal. *Id*.

With respect to the question of prejudice, this court has held that a court must evaluate the prejudice to

a defendant "in light of the interests that the speedy-trial requirement was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the criminally accused; (3) and to limit the possibility that the defense will be impaired." *State v. Tiner*, 340 Or 551, 555, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007). Of those, "the last is the most serious, because the inability of a defendant adequately to prepare a case skews the fairness of the entire system." *Id*. It is the defendant's burden to establish prejudice. *Id*. To succeed on a claim of prejudice based on the third factor, impairment of the defense, the defendant need only show that the delay created "a reasonable possibility of prejudice":

> "We conclude that in cases where inquiry into impairment of defense is necessary, it would be harsh to require proof with certainty. It is sufficient to show only a reasonable possibility of prejudice; this was shown in the present case by identification of potentially favorable witnesses who could not be found due to a delayed trial."

*State v. Ivory*, 278 Or 499, 508, 564 P2d 1039 (1977); *see also State v. McDonnell*, 343 Or 557, 574, 176 P3d 1236 (2007); *Tiner*, 340 Or at 555; *State v. Harberts*, 331 Or 72, 86, 11 P3d 641 (2000); *Emery*, 318 Or at 474 (all applying that standard).

In the Court of Appeals and in this court, defendant asserted only the third type of prejudice: impairment of the defense from the loss of the booking video. The Court of Appeals began by rejecting the state's argument that the arresting officer's testimony would have been an adequate substitute for the booking video, and, therefore, defendant's ability to mount a defense was not impaired. The court stated that, "[when] it is only the officer and a defendant present when the [event] occurs[, v]ideo recordings * * * can be uniquely powerful pieces of evidence because they create an irrefutable record of what occurred." *Ralston*, 310 Or App at 486-87 (internal quotation marks omitted). The court also rejected the state's contention that defendant's argument with respect to the helpfulness of the booking video was mere "speculation," stating,

> "It is an understatement to say that a defendant attempting to show that he suffered prejudice from evidence that

was lost or destroyed faces a seemingly impossible task, and parties and courts are well-served by recognizing the [difficulty] faced by defense counsel in these situations—situations that, by definition, only come about when there has been unexplained delay caused by the state. The Supreme Court has acknowledged that difficulty, explaining that '[p]roof of actual prejudice is often quite difficult' when a defendant is attempting to show prejudice 'where witnesses or records have disappeared or memories have dimmed.'"

*Id*. at 487 (quoting *Ivory*, 278 Or at 507-08). Reiterating that a defendant need only show a "reasonable possibility" of prejudice, the court nonetheless noted that it remains difficult for a defendant to provide nonspeculative proof that lost evidence (of which, by definition, one cannot know with certainty the contents) would be helpful to show a reasonable possibility of prejudice. Ultimately, the court held that "prejudice in the context of speedy trial is not binary; there are degrees of prejudice" and that "the possibility of prejudice is judged by assessing two parallel sliding scales: probability and materiality." *Ralston*, 310 Or App at 493. The court further explained:

"For probability, a defendant must provide an explanation as to how the lost evidence would be favorable. * * * For materiality, there must be something in the record, based on the specific facts of each case, to support the defendant's theory that the lost evidence would have been helpful to the theory of the case, in the context of how the evidence was presented at trial."

*Id*. (citation omitted).

The Court of Appeals held that, although defendant had shown that there was at least some probability that the missing evidence would be favorable, he nonetheless failed to carry his burden of establishing prejudice, because he had failed to show that the booking video would have been material to his defense. *Id*. at 497. According to the court, defendant's showing as to materiality was complicated by the fact that he had pleaded guilty to the charged offenses. That is, the court explained, the materiality of the video at trial was dependent on how the police officer would have testified concerning the fact that the police report did not describe the officer's observations of defendant's balance and

coordination. If the officer had testified that defendant was unsteady on his feet, for example, then the booking video would have had impeachment value. However, the court stated, it was equally possible that the officer would have admitted the missing observations in the report. Because this case was resolved on a guilty plea, the court observed, the record did not contain evidence of the police officer's testimony, and defendant's burden to establish the materiality of the booking video was therefore more difficult to meet. *Id.* at 496.

In addition, the court stated, defendant's showing of materiality was undermined by the fact that defendant, who was represented by the same law office throughout his case, was willing to enter a guilty plea five days after his arrest, without having sought to view the booking video. According to the court, "[d]efendant's willingness to enter a plea without having viewed the video is part of the totality, and weighs, in some measure, against claims of the video's materiality." *Id.*

Ultimately, the Court of Appeals held that, because of the relatively small period of unexplained delay, the fact that the state had not caused those short periods of unexplained delay intentionally, and the fact that the materiality of the missing evidence was uncertain, defendant had failed to establish a reasonable possibility of prejudice. Accordingly, the court held, defendant's speedy trial rights under Article I, section 10, were not violated. *Id.* at 497.

On review, defendant acknowledges that this case is "largely about a six-week delay near the start of defendant's case"—the period between the state's dismissal of the misdemeanor information and the filing of the indictment for felony DUII. Defendant argues that that period counts toward the total period of delay for purposes of the state constitution, because, even after dismissing the misdemeanor charge, the state intended to continue the prosecution. Defendant notes that the court proceedings were not terminated, but merely deferred, as evidenced by the fact that the case number remained the same after the state filed the indictment. And, defendant argues, under Article I, section 10, the state was not permitted to unreasonably defer the court

proceedings. *State v. Vasquez*, 336 Or 598, 605 n 5, 88 P3d 271 (2004) ("The constitutional instruction that 'justice shall be administered *** without delay' further suggests that those court proceedings, once commenced, shall not be prolonged or deferred."). Defendant claims that that initial six-week delay "resulted in the destruction of a video of defendant's booking into jail."

Defendant further argues that the Court of Appeals erred in two important respects in assessing the prejudice to defendant from the loss of the booking video: (1) in relying on the fact that defendant resolved his case by conditional plea and that, as a consequence, the record did not reflect how the arresting officer would have testified, and (2) in relying on the fact that defendant attempted to plead guilty to the misdemeanor DUII charge before seeking to view the booking video. Defendant argues that, if those considerations are removed from the equation, the remainder of the Court of Appeals' analysis shows that defendant met his burden of demonstrating a reasonable possibility of prejudice. And that reasonable possibility of prejudice, combined with the 14 months of partially unexplained overall delay, establishes a violation of Article I, section 10.

As an initial matter, we, like the Court of Appeals, conclude that we need not answer the question of whether the filing of the misdemeanor information in this case started the clock for purposes of determining whether defendant's Article I, section 10, right to a speedy trial was violated, because, for reasons that we explain below, we also conclude that defendant has not met his burden to show prejudice. However, we reach that latter conclusion for different reasons than those supporting the Court of Appeals' decision.

As the Court of Appeals correctly stated, courts consider three factors in determining whether a delay in bringing a case to trial violates Article I, section 10: the length of the delay, the reasons for the delay, and the prejudice to the defendant resulting from the delay. *Ralston*, 310 Or App at 477 (citing *Emery*, 318 Or at 472). We agree with the Court of Appeals that, assuming that the period of time between the dismissal of the misdemeanor DUII charge and the indictment for felony DUII counts for Article I, section 10,

purposes, the length of the overall delay—14 months from the time of the filing of the information until the hearing on the motion to dismiss and the defendant's guilty plea—was sufficiently lengthy as to weigh against the state and to warrant consideration of the other two factors. We also agree with the Court of Appeals' determination that only three and a half months of that period were unexplained and that there is no suggestion that the unexplained periods were intentional or the result of bad faith on the state's part.

It follows that defendant's claim for dismissal turns on whether we can conclude from the record that the delay resulted in prejudice to the defendant sufficient to warrant dismissal of the charges against him. On that point, we turn first to defendant's objection to the Court of Appeals' consideration of the booking video's "materiality" in assessing prejudice, and, in particular, to the court's conclusions (1) that the potential materiality of the lost video was made difficult to prove because defendant pleaded guilty, and (2) that defendant's claim of prejudice was undermined by the fact that defendant attempted to plead guilty to the misdemeanor charge before seeking to view the booking video. We agree with defendant that the Court of Appeals' reliance on defendant's failure to prove the potential materiality of the booking video, at a trial that never took place due to defendant's guilty plea, was misplaced.

Generally, an appellate court's review of a trial court's ruling is limited to the record as it had developed at the time of the ruling: "[W]e do not evaluate a court's pretrial decision with the benefit of hindsight by, for example, taking into account what happened at trial." *State v. Sperou*, 365 Or 121, 137, 442 P3d 581 (2019). And, as we have discussed, to succeed on a claim of prejudice based on impairment of the defense under Article I, section 10, the defendant need only show "a reasonable possibility of prejudice." *Ivory*, 278 Or at 508. However, in *Haynes v. Burks*, this court stated that the inquiry into the reasonable possibility of prejudice is slightly different depending on whether the speedy-trial claim is made before or after trial. 290 Or 75, 82, 619 P2d 632 (1980) (a claim that arises before trial "requires a more differentiated consideration of the element of prejudice"

than an appeal of a denial of a motion to dismiss that is raised after trial). As the court stated in *Haynes*,

> "on appeal from a conviction, the question of prejudice resulting from the delay can be examined retrospectively, though perhaps not with absolute certainty, and when a conviction is set aside for that reason, the reason by hypothesis precludes a later retrial. Thus a reasonable possibility that the delay will impair the defense is the proper prospective test for deciding that a case must proceed to trial, while a retrospective claim that a conviction must be reversed for delay reasonably calls for showing a more concrete likelihood that the delay was prejudicial to the defense."

*Id*. at 82 (emphases omitted). In keeping with the notion that a retrospective—post-trial—claim requires "a more concrete likelihood" of prejudice, this court held, in *State v. Mende*, 304 Or 18, 22-23, 741 P2d 496 (1987), that, after a conviction, some level of "actual prejudice" to the defendant's ability to prepare a defense is required. In other words, after a trial, it may be possible to determine whether the asserted prejudice actually materialized and, for that reason, a more substantial showing may be required.

However, most of our cases hew to the standard articulated in *Ivory*: namely, that it is sufficient to show only a reasonable possibility of prejudice when the matter is examined prospectively. *See, e.g.*, *McDonnell*, 343 Or at 574; *Tiner*, 340 Or at 555; *Harberts*, 331 Or at 86; *Emery*, 318 Or at 474 (all applying that standard). In *Ivory*, for example, the trial court had agreed with the defendant that his Article I, section 10, right to a speedy trial had been violated, and it dismissed the charge against him. Our review arose out of the state's appeal of the dismissal. For that reason, consideration of the issue of prejudice was prospective, insofar as no trial had been conducted. This court held that the defendant had established a reasonable possibility of prejudice by identifying potentially favorable witnesses who could not be found due to the delayed trial. *Ivory*, 278 Or at 508. The court did not consider what evidence the state might have introduced at a hypothetical trial that would have affected the materiality of the missing witnesses' testimonies.

Although defendant in this case was convicted on his guilty plea after the trial court denied his motion to dismiss, the posture of the case is akin to that in *Ivory*. No trial occurred; the police officer did not testify. Speculating about how the officer's potential testimony at a hypothetical trial might have affected the materiality of the lost booking video does not change the analysis of whether defendant had shown, at the pretrial hearing on his motion to dismiss, a reasonable possibility that his ability to defend himself against the felony DUII charge was impaired by the loss of that evidence.

We also disagree with the Court of Appeals' conclusion that the fact that defendant attempted to plead guilty to the misdemeanor DUII charge before seeking to view the booking video was relevant to the prejudice issue. In concluding that that plea attempt was relevant, the Court of Appeals inferred that "defendant's willingness to enter a guilty plea suggests that defendant didn't view the video as sufficiently exculpatory." *Ralston*, 310 Or App at 496. However, as this court has stated, an attempt to plead guilty does not support an inference respecting the defendant's perception of his or her guilt or chances at trial:

> "A defendant may wish to plead guilty for any one of several reasons having nothing to do with his guilt. He may wish to spare his family the unfavorable publicity attendant upon a trial. He may, for private reason, prefer to plead guilty rather than have his past paraded before the world. He may fear that a trial might result in a relative or friend being charged as an accessory or in the defendant's being charged with other crimes. These and other cogent reasons may impel a defendant who does not believe he is guilty to plead guilty and waive a public trial."

*State v. Thomson*, 203 Or 1, 13, 278 P2d 142 (1954) (internal quotation marks and citation omitted).

Here, that defendant did not view the booking video as exculpatory is not the only, or even the most likely, inference that could be drawn from defendant's willingness to enter a guilty plea five days after his arrest. Defendant knew that he had two prior DUII convictions, which would have elevated his misdemeanor charge to a felony. With that in mind, it is much more likely that defendant's first priority

was avoiding the risk of a felony conviction; attempting to plead guilty before the state withdrew the misdemeanor charge, even if defendant believed that the booking video would be exculpatory, was the most efficacious way to accomplish that goal. Indeed, the state recognized that defendant attempted to plead guilty to avoid a potential felony conviction and never contended that the attempt reflected defendant's assessment of the evidence.[5]

To summarize, we conclude that the Court of Appeals erred in holding that defendant had failed to prove that his ability to mount a defense was impaired because he did not establish that the booking video would have been "material" at a trial had he not pleaded guilty. We also conclude that the Court of Appeals erred in relying on the fact that defendant attempted to plead guilty before seeking the booking video as evidence that he himself did not view the video as sufficiently exculpatory. Nevertheless, as we will explain, we agree with the Court of Appeals' ultimate conclusion that defendant has not established prejudice resulting from the delay so as to warrant dismissal of the charges against him.

Our cases make clear that there must be a causal connection between the unreasonable delay and the prejudice to the defendant. *See, e.g.*, *Tiner*, 340 Or at 555 ("defendant must show that the delay caused a reasonable possibility of prejudice to the ability of the defendant to prepare a

---

[5] We also observe that both OEC 410 and ORS 135.445 preclude the court from using defendant's attempt to plead guilty against him. OEC 410 provides:

"(1)  A plea of guilty or no contest which is not accepted or has been withdrawn shall not be received against the defendant in any criminal proceeding.

"(2)  No statement or admission made by a defendant or a defendant's attorney during any proceeding relating to a plea of guilty or no contest which is not accepted or has been withdrawn shall be received against the defendant in any criminal proceeding."

Both OEC 410 and ORS 135.445 apply to appellate courts. OEC 101(1). And a "criminal proceeding" includes a criminal appeal. ORS 131.005(7) ("'Criminal proceeding' means any proceeding which constitutes a part of a criminal action or occurs in court in connection with a prospective, pending or completed criminal action."). One purpose behind the exclusion of attempts to plead guilty is that "neither [the] defendant nor the state should be penalized for engaging in practices which are consistent with the objectives of the criminal justice system." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 267, 164 (Nov 1972).

defense"); *Harberts*, 331 Or at 86 (to same effect); *Emery*, 318 Or at 474 (same); *Haynes*, 290 Or at 90 (defendant must show that the delay "created a reasonable possibility of prejudice to [defendant's] defense"). In *Emery*, for example, the defendant was cited for illegal possession of an elk in October 1988. After a series of procedural mishaps, the criminal case was eventually scheduled for trial in October 1990. The defendant moved for dismissal on both statutory and constitutional speedy-trial grounds. The trial court denied the motion and the Court of Appeals affirmed. On review in this court, with respect to the alleged violation of Article I, section 10, the defendant argued, among other things, that he had suffered prejudice from the delay in the form of an inability to take a planned vacation due to the pending criminal charge. The court, considering whether the delay "created a reasonable possibility of prejudice," determined that that harm was not the result of the delay. The court stated:

> "[T]he travel plans that defendant decided to forego [*sic*] because of the pending charge were for a vacation in December 1988. The decision to forgo the vacation was not affected by the *delay*[] and, therefore, does not affect the speedy trial inquiry."

*Emery*, 318 Or at 473 (emphasis in original; footnote omitted). That is, the court considered the causal connection between the delay and the harm and concluded that the defendant had not proved that the delay created the particular harm alleged.[6]

Similarly, in *Tiner*, an aggravated murder case in which the defendant's trial was set for a date four and one-half years after his arrest, the defendant moved for dismissal of the charge on constitutional speedy-trial grounds. The trial court denied the motion, and, on direct review, this court affirmed that ruling. On review, the defendant argued,

---

[6] This court reversed the defendant's conviction in *Emery*, concluding that the state had violated the defendant's right to a speedy trial under *former* ORS 135.747, which, the court held, did not require a showing of prejudice. 318 Or at 466, 471. The court rejected the defendant's argument that his constitutional right to a speedy trial also was violated, which would have required dismissal of the charge with prejudice, holding that "defendant ha[d] failed to show that the delay between the time defendant was cited and the time he was brought to trial 'created a reasonable possibility of prejudice to [defendant's] defense.'" *Id*. at 474 (quoting *Haynes*, 290 Or at 90).

among other things, that his defense was prejudiced by the delay in the following two ways: (1) a witness against him, who would have been unavailable to testify at a timely trial because she would have asserted her Fifth Amendment right against self-incrimination, had, during the delay, completed her trial and was thus available to testify against him for the state; and (2) the Court of Appeals had decided a case during the delay that affected the rules of evidence in ways that made his case more difficult to defend. This court held that those "two events merely were fortuitous"; defendant had not demonstrated that any prejudice to him due to those two events resulted from the delay. *Tiner*, 340 Or at 557.

In this case, defendant has maintained, and the Court of Appeals seemed to agree, that the 30-day delay between the prosecutor obtaining defendant's prior criminal history and the filing of the indictment "caused the destruction of the video." *Ralston*, 310 Or App at 480. Indeed, the Court of Appeals' analysis proceeded on that premise. However, we disagree that defendant has shown or could show that any prejudice to him from the loss of the booking video was the result of the delay. Although it is indisputable that the booking video was destroyed during the approximately 40-day window between the dismissal of the misdemeanor information and defendant's indictment on the felony charge, that fact alone does not mandate the conclusion that there was a causal connection between that delay and the loss of the booking video. As we shall explain, even if the prosecutor had acted with impeccable promptness and obtained an indictment as soon as possible after receiving the record of defendant's prior DUII convictions, the chance that the videotape would not already have been overwritten by the time defense counsel requested it was infinitesimal.

The prosecutor received the information about defendant's prior convictions on June 9, 2016, a Thursday. Let us assume that the prosecutor opened the file and became aware of defendant's prior convictions that day and that she obtained a grand jury indictment within 10 days— that is, by June 19.[7] Because defendant was a resident of

_____

[7] That is approximately the time frame in which the prosecutor acted in this case; the prosecutor became aware of defendant's prior DUII convictions on July 8 and obtained an indictment on July 19.

Washington, after the indictment, the sheriff's office would have had to notify law enforcement in Washington that a warrant had been issued for defendant's arrest, as happened in this case. In this case, the sheriff's office notified the Washington authorities 10 days after the indictment, a period that the Court of Appeals referred to as "prompt." Upon receiving notice of the Oregon warrant, Washington authorities did not arrest defendant until five months later. The Court of Appeals found that period of delay to be explained and reasonable.

Defendant would then have had to be extradited (or to waive extradition, as happened here) and transported to Oregon.[8] Even supposing that it had taken a matter of days, rather than five months, to arrest defendant, and that the sheriff's office had arranged transport to return defendant to Oregon within days, rather than two and one-half months, it is improbable that defendant would have been arraigned, and counsel appointed, in fewer than 30 days after he was indicted.

As we have stated, the parties agree that the videotape could have been overwritten as early as July 3, 2016. Even in a perfect world, where the prosecutor, Washington state officials, the sheriff's office, and defense counsel all acted with the most admirable and unfailing promptness, it would have been virtually impossible for defendant to have obtained a copy of the booking video before it was destroyed. We also note that, as defendant has pointed out, it was clear to all parties at the time that the information was dismissed that the state intended to continue the prosecution and charge him with felony DUII. It was also clear that the prosecution would be based not on defendant's blood-alcohol content but on the police officer's observations of him during the arrest. Moreover, the same law office represented defendant throughout his case. Given that the prosecution was effectively deferred rather than terminated, nothing stood in the way of defense counsel requesting a copy of the booking video immediately upon the dismissal

---

[8] In this case, that process took an additional two and one-half months, a period that the Court of Appeals found to be unexplained and to weigh against the state.

of the misdemeanor information rather than waiting for the eventual indictment.[9] It follows that, even if we accept that the speedy-trial clock began to run on the filing of the misdemeanor information, and that the 40-day period between the prosecutor's June 9, 2016, receipt of defendant's criminal record and the July 19, 2016, indictment was unreasonable, we simply cannot conclude that that delay—or any of the other delays that defendant attributes to the state and characterizes as unreasonable—was the reason that the booking video was lost or was the reason for any ensuing prejudice to defendant. The destruction of the booking video was a happenstance that was unrelated to any unreasonable delay in bringing defendant to trial on the felony DUII charge.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

---

[9] We note that defense counsel did not seek a copy of the booking video until after receiving the police report as part of the discovery in the case, and, therefore, did not learn of the destruction of the video until 40 days after her appointment. Given that timing, the booking video could well have been destroyed before it was requested even if defendant had been charged initially with felony DUII by indictment rather than with misdemeanor DUII by information.